## THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

GLENDA GRANT, f/k/a GLENDA
RANDOLPH, individually and on
behalf of a class of persons similarly                    Case No. 3:15-cv-1376-J-34 PDB
situated,

      Plaintiff,

vs.

OCWEN LOAN SERVICING, LLC,

      Defendant.

_____/

---

### DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS
### AND SUPPORTING MEMORANDUM OF LAW

---

Timothy Allen Andreu
Florida Bar No. 443778
BRADLEY ARANT BOULT CUMMINGS LLP
100 S Ashley Dr Ste 1300
Tampa, FL 33602
Telephone:    (813) 229-3333
Facsimile:    (813) 229-5946
tandreu@babc.com

*Attorney for Defendant,*
*Ocwen Loan Servicing, LLC*

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Ocwen Loan Servicing, LLC ("Ocwen") respectfully moves the Court to dismiss Plaintiff Glenda Grant's Class Action Complaint (Doc. 1) for lack of subject matter jurisdiction, for Ms. Grant's lack of standing, and for the complaint's failure to state claims upon which relief can be granted.

## INTRODUCTION

In this case, Ms. Grant alleges that Ocwen violated the Chapter 7 discharge order granted her in 2011 by U.S. Bankruptcy Judge Jerry A. Funk by sending her monthly account statements and delinquency notices following the close of her bankruptcy case.  But she fails to mention that in granting her that discharge from personal liability on her home loan debt, Judge Funk also affirmed—over her own repeated objections—the validity of the mortgage lien on her property, and expressly permitted Deutsche Bank (the holder of her mortgage) and its assigns (*e.g.*, Ocwen) "to pursue [their] lawful *in rem* remedies as to the property."  *See* Order Granting Motion For Relief From The Automatic Stay In Favor Of Deutsche Bank, *In re Glenda Randolph Grant*, No. 3:10-bk-10754-JAF (Bankr. M.D. Fla. signed Mar. 15, 2011) (CM/ECF Doc. 25).  Meanwhile, Ms. Grant has not made a payment on the home since the beginning of 2009, but has continued to live in it, payment free for the last several years, pending completion of her bankruptcy and the related state court foreclosure proceedings against the home.

The effect of Judge Funk's Orders and the Bankruptcy Code are clear: the discharge given to Ms. Grant did not give her the ability to "ride through" bankruptcy and obtain a free house.  Her discharge did not eliminate the mortgage on her home, nor Ocwen's ability to enforce it.  The discharge order merely prevented Ocwen from obtaining any *in personam* recovery against Ms. Grant on the debt.  Ocwen was plainly entitled to engage in actions and activity to enforce the mortgage *in rem,* and communicate with Ms. Grant, as both title owner

2

and resident of the property, regarding the status of the mortgage (including the accruing balance of the mortgage lien).  11 U.S.C. § 524(j); *accord* 4 COLLIER ON BANKRUPTCY ¶ 524.02[d] (16th ed. 2012) ("[C]ourts have held that it is not *per se* improper for a secured creditor to contact a debtor [who retains possession of a home following bankruptcy] to send payment coupons, determine whether payments will be made on the secured debt or inform the debtor of a possible foreclosure or repossession . . .").

In fact, federal courts have already found that Ocwen may communicate with discharged borrowers to obtain payments on non-discharged mortgages in lieu of foreclosure without running afoul of the Bankruptcy Code, the Fair Debt Collection Practices Act, or its state counterparts, because Ocwen's communications contain "bankruptcy disclaimer" language sufficient to inform such discharged borrowers that Ocwen is not attempting to collect a debt personally from them.  *See, e.g.*, *Lovegrove v. Ocwen Loan Serv., LLC*, No. 14-cv-329, 2015 WL 5042913, at *6, 12-13 (W.D. Va. Aug. 26, 2015), *appeal pending*; *LaCourse v. Ocwen Loan Serv., LLC*, No. 14-cv-13, 2015 WL 1565250, at *9-13 (D.N.H. Apr. 7, 2015).  Ms. Grant's complaint fails, therefore, because Ocwen was legally entitled to send her such communications.

On top of that, the Eleventh Circuit has made clear that the only court with jurisdiction to enforce a discharge order is the Bankruptcy Court who entered it.  *See, e.g.*, *In re McLean*, 794 F.3d 1313, 1318-20 (11th Cir. 2015); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012).  As a result, any claim premised on a supposed discharge violation is premature, as the existence of a discharge violation must first be determined by the Bankruptcy Court which entered Ms. Grant's discharge order, not this Court.

Finally, nowhere in her 108 paragraph complaint does Ms. Grant allege that she suffered any actual injury as a result of receiving monthly account statements and delinquency notices

from Ocwen—she simply points to statutory violations Ocwen supposedly committed in sending those notices to her.  Those allegations fail to demonstrate that Ms. Grant has Article III standing.  For these and the other reasons explained herein, her complaint must be dismissed.

## STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

Ms. Grant took out a home mortgage loan in 2007, and promptly defaulted.  Doc. 1 at ¶ 7.  As a result, her lender—IndyMac Bank—brought a foreclosure action against her and the property on April 9, 2009.  *Id.*; *see also* Complaint, *IndyMac Fed. Bank, FSB v. Glenda J. Randolph, et al.*, No. 16-2009-CA-005729 (Duval Cnty. Cir. Ct. filed Apr. 9, 2009) (a true and correct copy of which is attached as **Exhibit A**).[1]  Ms. Grant then sought bankruptcy protection under Chapter 7 of the Bankruptcy Code.  Doc. 1 at ¶ 8.  This resulted in a stay of the foreclosure action.

Ms. Grant's loan and mortgage were then transferred to Deutsche Bank, who appeared in her bankruptcy proceedings and sought relief from the automatic stay.  *See* Deutsche Bank's Motion For Relief From The Automatic Stay, *In re Glenda Randolph Grant*, No. 3:10-bk-10754-JAF (Bankr. M.D. Fla. filed Feb. 24, 2011) (CM/ECF Doc. 20) (a true and correct copy of which is attached as **Exhibit B**).[2]  Therein, Deutsche Bank explained that Ms. Grant had "not made payment on the subject mortgage since the installment due on February 1, 2009."  *Id.* at ¶ 6.  Ms. Grant opposed Deutsche Bank's motion, claiming Deutsche Bank lacked any valid security interest in her home.  *See* Debtor's Objection To Motion For Relief From Stay, *In re Glenda*

---

[1] The Court may take judicial notice of, and consider, documents that are public records without converting this motion to dismiss into a motion for summary judgment.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (in considering a motion to dismiss, a court may consider the allegations of the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

[2] Not only may the Court take judicial notice of this filing as a matter of public record, the Court may also consider the filings and orders from Ms. Grant's bankruptcy action because that proceeding is repeatedly referenced by her in her operative complaint, and it is central to her claims.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

*Randolph Grant*, No. 3:10-bk-10754-JAF (Bankr. M.D. Fla. filed Mar. 15, 2011) (CM/ECF Doc. 24) (a true and correct copy of which is attached as **Exhibit C**).  Judge Funk overruled Ms. Grant's objections the same day, and lifted the automatic stay to allow pursuit of "lawful *in rem* remedies as to the property."  *See* Order Granting Motion For Relief From The Automatic Stay In Favor Of Deutsche Bank, *In re Glenda Randolph Grant*, No. 3:10-bk-10754-JAF (Bankr. M.D. Fla. signed Mar. 15, 2011) (CM/ECF Doc. 25) (a true and correct copy of which is attached as **Exhibit D**).  Shortly thereafter, Judge Funk entered a discharge order on March 24, 2011 in Ms. Grant's favor.  Doc. 1-1 *passim*.  However, that order cautioned Ms. Grant that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against [your] property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case."  *Id.* at 2.

Unhappy that Judge Funk had not discharged her mortgage as well as her personal liability on the debt, Ms. Grant moved the next day for reconsideration of his March 15, 2011 Order.  *See* Debtor's Motion For Rehearing Of The March 15, 2011 Order Granting Motion For Relief From Automatic Stay In Favor Of Deutsche Bank, *In re Glenda Randolph Grant*, No. 3:10-bk-10754-JAF (Bankr. M.D. Fla. filed Mar. 25, 2011) (CM/ECF Doc. 29) (a true and correct copy of which is attached as **Exhibit E**).  Deutsche Bank responded on April 29, 2011. *See* Deutsche Bank's Response To Debtor's Motion For Rehearing Of The March 15, 2011 Order Granting Motion For Relief From Automatic Stay, *In re Glenda Randolph Grant*, No. 3:10-bk-10754-JAF (Bankr. M.D. Fla. filed Apr. 29, 2011) (CM/ECF Doc. 33) (a true and correct copy of which is attached as **Exhibit F**).  A hearing was held, following which Judge Funk denied Ms. Grant's motion for reconsideration.  *See* Order Denying Debtor's Motion For Rehearing Of The March 15, 2011 Order Granting Relief From Automatic Stay In Favor Of

Deutsche Bank, *In re Glenda Randolph Grant*, No. 3:10-bk-10754-JAF (Bankr. M.D. Fla. signed Aug. 2, 2011) (CM/ECF Doc. 37) (a true and correct copy of which is attached as **Exhibit G**). Ms. Grant's bankruptcy case was then closed by the Bankruptcy Court, which triggered the resumption of the state court foreclosure action against her property.

Deutsche Bank subsequently retained Ocwen "in late 2013" to service the remaining, non-discharged mortgage interest it held in the property.  Doc. 1 at ¶ 11.  In its role as the servicer of the mortgage, Ocwen sent Ms. Grant monthly account statements and delinquency notices.  Doc. 1-1 at 3-27.  Those statements and notices contain "bankruptcy disclaimer" language, which explained to Ms. Grant that they should not be construed as an effort to collect a debt from her personally due to her prior bankruptcy discharge.  *See, e.g.*, Doc. 1-1 at 22 (Sept. 2014 monthly account statement, noting—under the caption "Important Bankruptcy Information"—that if "the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt,"); *Id.* at 24 (Feb. 2016 monthly account statement, noting—under the caption "Important Information"—that "[i]f this debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally."); *Id.* at 25-27 (delinquency notices, noting on each page that "[i]f this debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally," and including additional bankruptcy disclosures on page 2).[3]

---

[3] While Ms. Grant attached some complete monthly account statements to her complaint, the majority are incomplete in that only the front page of the statements are attached.  However, those partial statements plainly

Despite having lost her prior efforts in bankruptcy to avoid both the note *and mortgage* on her home, Ms. Grant filed this action on November 17, 2015. Doc. 1 *passim.* In her complaint, Ms. Grant alleges that Ocwen violated the injunctive terms of Judge Funk's discharge order by sending her monthly account statements and delinquency notices because, in her words, the effect of Judge Funk's order precludes Ocwen from "collect[ing] or attempt[ing] to collect *any amount* from" her. *Id.* at ¶ 16 (emphasis added). She claims the monthly account statements and delinquency notices are improper because they might "cause [her] to act." *Id.* at ¶ 19. Although all of her claims are based on perceived violations of Judge Funk's discharge order, Ms. Grant does not bring any claims under the Bankruptcy Code, and in fact has obtained no finding of a discharge violation from Judge Funk. Instead, she asks this Court to make such a finding in the course of adjudicating her claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55, *et seq.* ("FCCPA"), and the Federal Declaratory Judgement Act, 28 U.S.C. § 2201. Ms. Grant seeks an award of damages, varied declaratory and injunctive relief, pre- and post-judgment interest, and her attorneys' fees and costs. Doc. 1 at ¶¶ 31-50 (FDCPA); *Id.* at ¶¶ 51-86 (FCCPA); *Id.* at ¶¶ 87-108 (DJA).

## ARGUMENT

### I.   MS. GRANT'S CLAIMS MUST BE HEARD BY THE BANKRUPTCY COURT

This Court should dismiss this action without prejudice, or refer the matter to the Bankruptcy Court, because all of Ms. Grant's claims are expressly dependent on her bankruptcy

---

note—just as the complete versions note—"[s]ee reverse side for important information and state specific disclosures." *Compare, e.g.*, Doc. 1-1 at 3 (partial statement) *with* Doc. 1-1 at 21-22 (complete statement).

discharge, its legal effect, and her un-adjudicated claim that a discharge violation has occurred.[4]

Under her FDCPA and FCCPA claims, for example, Ms. Grant alleges that Ocwen has "attempt[ed] to or did collect" a debt from her in violation of 15 U.S.C. § 1692(e) and FLA. STAT. §§ 559.72(7) and (9) because the debt "had been discharged," thereby "fully releas[ing] her] from any and all personal monetary liabilities on the subject loan." Doc. 1 at ¶¶ 40-41, 58-59, 76-77. Ms. Grant's declaratory and injunctive claims are premised on the same alleged misconduct. *Id.* at ¶¶ 93-94. Therefore, her claims are clearly predicated on Ocwen's alleged violation of the discharge injunction, which she apparently believes—contrary to Judge Funk's repeated rulings—eliminated her responsibility for both her home loan debt *and mortgage*. *AT&T Mobility, LLC v. Bushman*, No. 11-cv-80922, 2011 WL 5924666, at *2 (S.D. Fla. Sept. 23, 2011) ("The nature of a pleading is determined by its substance, not its label.); *accord* 61A AM. JUR. 2D *Pleading* § 83 (on-line ed.) ("A written pleading is to be judged by its substance" and not "the form of the pleading" or "the plaintiff's theory").

But the determination of whether there has been a violation of a discharge order does not lie before this Court in the first instance. "Where, as in this case, a debtor thinks a creditor is acting in violation of a bankruptcy court's § 524 discharge order, relief is properly sought *in the first instance* from the bankruptcy court rather than in the district court which only has appellate jurisdiction over bankruptcy cases." *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1329-30 (S.D. Fla. 2014) (emphasis added, quotation omitted). It is "the court that enters an injunctive order [who] retains jurisdiction to enforce its order" and, "[i]n this respect, a bankruptcy court is no different than any other federal court." *Alderwoods Grp., Inc. v. Garcia*,

---

[4] A discharge injunction is a creation of the Bankruptcy Code. Under the Bankruptcy Code, "[a] discharge in a case under this title … (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived …" 11 U.S.C. § 524(a).

682 F.3d 958, 970 (11th Cir. 2012).   Accordingly, it is the bankruptcy court who enters a discharge order who "alone possesses the power to enforce compliance with and punish contempt of that order. . . .   Other courts are without jurisdiction to do so."   *Id.*; *see also Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1290 (5th Cir. 1989) ("We are aware of no basis upon which a district court may assert subject matter jurisdiction over violations of orders issued in other federal courts."). ***This issue is not a question of preemption***; instead, it is plainly an issue of subject matter jurisdiction.   *Alderwoods Grp*., 682 F.3d at 965-71; *In re McLean*, 794 F.3d 1313, 1318-20 (11th Cir. 2015);. ("hold[ing] that the court that alone possessed the power to enforce compliance with the discharge injunction here was the United States Bankruptcy Court for the Middle District of Alabama, irrespective of the case number of, or the judge who might have presided over, the prior proceeding").[5]

Accordingly, the Court should dismiss Ms. Grant's complaint without prejudice, or refer her individual claims to the Bankruptcy Court.   It is that court, and that court alone, who has the subject matter jurisdiction to interpret and enforce Ms. Grant's discharge injunction in the first instance, and determine whether there has been a violation of its terms.   The rule that only the court which enters an injunction has jurisdiction to determine if it has been violated is well established not only in the bankruptcy area, but in federal and common law jurisprudence generally.   *See, e.g.*, *In re Debbs*, 158 U.S. 564, 594–95 (1895) ("[T]he power of a court to make

---

[5] *See also Helman*, 85 F. Supp. 3d at 1329 ("A bankruptcy court injunction must be enforced and construed by the bankruptcy court that issued the injunction."); *Boutwell v. Walker*, No. 13-cv-170, 2013 WL 1331670 (M.D. Ala. Apr. 2, 2013) (dismissing debtor's action to enforce compliance with bankruptcy court order on jurisdictional grounds, because it was the bankruptcy court—not the district court—who retained the "inherent, original jurisdiction to enforce its consent order through sanctions or other means."), *report & recommendation adopted*, 2013 WL 1774623 (M.D. Ala. Apr. 25, 2013); *In re New River Dry Dock, Inc*., 497 B.R. 359, 361 (Bankr. S.D. Fla. 2013) (concluding that a bankruptcy court "has unquestioned authority to enforce its own orders . . . [and] the inherent power to sanction contempt of its orders."); *Pereira v. First N. Am. Nat'l Bank*, 223 B.R. 28, 31 (N.D. Ga. 1998) (dismissing debtor's action for damages stemming from alleged post discharge injunction violations, and concluding that the debtor's claims had to be brought before the "bankruptcy court that issued the discharge injunction").

an order carries with it the equal power to punish for a disobedience of that order…. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency."), *abrogated on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968); *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993) ("When a court issues an injunction, it automatically retains jurisdiction to enforce it.").

## II.    MS. GRANT LACKS STANDING.

### A.    MS. GRANT'S BARE ALLEGATION OF STATUTORY VIOLATIONS, UNACCOMPANIED BY ANY ALLEGATION OF ACTUAL INJURY TO HER, DOES NOT SATISFY ARTICLE III'S REQUIREMENTS.

Even if the Court had subject matter jurisdiction to hear this action, judgment would still be due to be entered in Ocwen's favor because Ms. Grant lacks Article III standing, which "is a[nother] jurisdictional defect" with this case.  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 n. 6 (11th Cir. 1993)).  Ms. Grant lacks Article III standing because she has plead no—and in fact can claim no—actual injury-in-fact.  All she has alleged is that Ocwen committed a bare statutory violation of the FDCPA's and FCCPA's requirements by sending her monthly account statements and delinquency notices, but nowhere does she claim that these communications caused her any personal injury.

Whether or not Ms. Grant has statutory standing under the FDCPA and the FCCPA, she still must show that she has Article III standing as well.  *U.S. v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987); *accord Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir. 2003) (describing the differences between constitutional, prudential and statutory standing).[6]  To do that, Ms. Grant must explain how "[s]he personally has suffered

---

[6] The same holds true with respect to Ms. Grant's Declaratory Judgment Act claim, because the fact "[t]hat a plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, does not relieve h[er] of the burden of satisfying the prerequisites for standing," *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008).  After all, the Declaratory Judgment Act is "procedural" and "do[es] not create or change any substantive

some actual or threatened injury as a result of [Ocwen's] putatively illegal conduct." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 542 (1986); *accord Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Yet, Mc. Grant does not claim any injury.  Instead, the only "harm" she is alleges is Ocwen's supposed FDCPA and FCCPA violations caused by its alleged violation of Judge Funk's discharge order.  Doc. 1 at ¶¶ 47, 66, 85.  Ms. Grant apparently believes all she need do is allege that Ocwen sent her monthly account statements and delinquency notices and, based on that alone, she can claim damages, her attorneys' fees and costs regardless of whether she suffered any injury or not.  Doc. 1, ¶¶ 47-49, 466-68. 85-86.

Over the last two years, the Eleventh Circuit has made abundantly clear that allegations of "[a] statutory violation alone will not suffice to create standing." *Morales v. U.S. Dist. Court for Southern Dist. of Fla.*, 580 F. App'x 881, 887 (11th Cir. 2014).  More is required—litigants like Ms. Grant must (1) allege that a defendant violated some statute, *and also* (2) "sufficiently allege[] a cognizable injury" caused by the defendant's statutory violation.  *Id.* at 886; *see also Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015) (even "where a statute confers new legal rights on a person, that person will [only] have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights."); *Trujillio v. Florida*, 481 F. App'x 598, 599 (11th Cir. 2012) (affirming dismissal of § 1983 claim because the plaintiff "failed to meet Article III requirements of standing.  He did not allege in his complaint any injury in fact that occurred to him as a result of Florida's use of red light traffic cameras."), *cert. denied* — U.S. —, 133 S. Ct. 951 (2013); *U.S. v. Weiss*, 467 F.3d 1300, 1311 (11th Cir. 2006)

---

rights."  *Bele v. 21st Century Centennial Ins. Co.*, No. 15-cv-526, 2015 WL 5155214, at *3 n.2 (M.D. Fla. Sept. 1, 2015).

("While it is true that Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury exists without the statute, a federal court's jurisdiction can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.").  *Accord City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1272 (11th Cir. 2015) (denying bank's motion to dismiss for lack of standing after concluding that the plaintiff "has said enough to allege an injury in fact for constitutional standing purposes" with respect to its Fair Housing Act claim).

Article III standing does not depend "on the merits of [Ms. Grant's] contention that [Ocwen's] particular conduct is illegal." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (emphasis added), *cert. denied*, — U.S. —, 134 S. Ct. 822 (2013). Instead, to have standing Ms. Grant must also demonstrate that she has "a stake in th[e] controversy that is real enough and concrete enough to entitle [her] to be heard," *id.*, by offering evidence (or, at this stage, allegation) that Ocwen's supposed statutory violations caused her "a concrete, particularized, and personal injury" ***beyond the statutory violation itself***.  *Palm Beach Golf Center*, 781 F.3d at 1251; *see also Trujillio*, 481 F. App'x at 599; *Weiss*, 467 F.3d at 1311. As the Supreme Court has explained, regardless of whether a statute provides a private right of action for a statutory damage remedy in lieu of a showing of actual damage, "[o]f course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself" caused by the statute's violation in order to have the standing necessary to bring the suit in federal court.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, — U.S. —, 135 S. Ct. 2652 (2015) ("To qualify as a party with standing to litigate, [a plaintiff] must show, first and foremost, injury …") (quotation omitted).

Accordingly, while Ms. Grant may have alleged enough to show that she has *statutory standing* under the FDCPA and FCCPA, her allegations fall far short of demonstrating that she also has Article III standing. This is a fatal omission, because Ms. Grant bore "the burden to clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements" in her complaint. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005). Since she has failed to do so, "th[e C]ourt lacks the power to create jurisdiction by embellishing [her] deficient allegation of injury." *Id.* And it would be ironic indeed to find that Ms. Grant was injured merely because Ocwen sent her indisputably *truthful* information concerning the balance of the mortgage on her property, particularly given that the mortgage was expressly validated and left intact by the same judge who granted her a discharge of personal liability, and given that such correspondence neither sought nor resulted in the collection of anything from her personally. Because Ms. Grant "did not allege in [her] complaint any injury in fact that occurred to [her] as a result of" Ocwen's supposed violations of Judge Funk's discharge order, she has "failed to meet Article III requirements of standing." *Trujillio*, 481 F. App'x at 599.

### B.   IF THE COURT NEVERTHELESS BELIEVES MS. GRANT CAN SATISFY ARTICLE III'S REQUIREMENTS WITHOUT ALLEGING ANY ACTUAL INJURY, THEN THE COURT SHOULD STAY THIS CASE PENDING THE SUPREME COURT'S RESOLUTION OF *SPOKEO, INC. V. ROBINS*.

If for any reason the Court does not dismiss for lack of standing (despite Ms. Grant's failure to allege any actual injury in her complaint and despite the recent Eleventh Circuit decisions explaining that allegation of a statutory violation alone will not satisfy Article III's injury-in-fact requirement), then the Court should stay this action pending the United States Supreme Court's review of the Ninth Circuit's opinion in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *cert. granted* — U.S. —, 125 S. Ct. 1892 (2015). The issue before the Supreme Court in *Spokeo* is "[w]hether Congress may confer Article III standing upon a plaintiff who

suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." *See* Petition for a Writ of Certiorari, *Spokeo, Inc. v. Robins*, No. 13-1339, 2014 WL 1802228, at *1 (filed May 1, 2014). Briefing in *Spokeo* has been completed, and the case was argued on November 2, 2015.[7] Obviously, the Court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere, *see*, *e.g.*, *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997), and there is substantial precedent for granting a stay in precisely these circumstances. *See, e.g.*, *Tel. Sci. Corp. v. Hilton Grand Vacations Co., LLC*, No. 15-cv-969, 2015 WL 7444409 (M.D. Fla. Nov. 20, 2015) (ordering temporary stay of TCPA lawsuit "pending the Supreme Court's resolution of *Spokeo*"); *Luster v. Sterling Jewelers*, No. 15-cv-2854, 2015 WL 9255553 (N.D. Ga. Dec. 17, 2015) (same, with respect to putative TCPA class action); *Lopez v. Miami-Dade Cnty.*, No. 15-cv-22943, 2015 WL 7202905 (S.D. Fla. Nov. 6, 2015) (same, with respect to putative FACTA class action). *Accord Estate of Miller ex rel. Miller v. Toyota Motor Corp.*, No. 07-cv-1358, 2008 WL 2704492, at *1 (M.D. Fla. July 3, 2008) ("District courts have the discretion to issue a stay pending the decision of a substantially related question of law by the Circuit Court or the United States Supreme Court.").

## III.   MS. GRANT'S COMPLAINT FAILS TO STATE A VIABLE CAUSE OF ACTION.

Even if Ms. Grant had Article III standing, and the Court subject matter jurisdiction to hear her claims, her complaint would still have to be dismissed because it fails to state a claim upon which relief could be granted. This is because nothing Ocwen did violated the terms of Judge Funk's discharge order.

---

[7] *Spokeo, Inc. v. Robins*, No. 13-1339, Docket, available at *http://www.supremecourt.gov/Search.aspx?FileName=/ docketfiles/13-1339.htm* (last visited Jan. 11, 2016).

As explained *supra*, all of Ms. Grant's causes of action are based on the assumption that Ocwen violated Judge Funk's discharge order by sending her monthly account statements and delinquency notices.  She apparently believes the effect of his discharge order precludes Ocwen from "collect[ing] or attempt[ing] to collect *any amount* from" her.  Doc. 1 at ¶ 16 (emphasis added).  But in granting her a discharge from any personal liability on her home loan debt, Judge Funk also affirmed—over her repeated challenges—the validity of the mortgage on her property.  Clearly, Ms. Grant understood that the continued viability of the mortgage precluded her from indefinitely keeping her home "for free" following her discharge.

The point is that "a Chapter 7 discharge is not a walk in the park; it is a benefit that comes with certain costs."  *Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 400 (1st Cir. 2002).  While such a discharge will extinguish a borrower's *personal* liability on her debts, thereby giving her a "fresh start," it will not affect the liens she gave her creditors in her property to secure those debts.  *See, e.g.*, *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992); *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991); *Johnson v. Home State Bank*, 501 U.S. 78, 83-85 (1991).  In other words, a fresh start in bankruptcy does not relieve a debtor of the burdens of post-petition property ownership, and a discharge injunction does not prohibit all communications between a secured creditor and the debtor, but only those designed "to collect, recover or offset [a pre-petition] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

Moreover, the secured creditor's recourse is not limited to foreclosure or repossession of the collateral.  Under Section 524(j) to the Bankruptcy Code, 11 U.S.C. § 524(j), the "holder of a mortgage on the debtor's principal residence may seek and obtain periodic payments on such mortgage, in the ordinary course of business, rather than pursue an *in rem* foreclosure."  *In re Steinberg*, 447 B.R. 355, 358 (Bankr. S.D. Fla. 2011); *see also In re Pratt*, 462 F.3d 14, 18-19

(1st. Cir. 2006) (explaining that nothing in the Bankruptcy Code obligates a secured creditor "to foreclose on and/or repossess collateral"—the recourse of discharged debtor who no longer wants the collateral or the mortgage-related consequences of retaining title to it is to surrender it to the creditor).

Therefore, "[d]espite the discharge injunction, under 11 U.S.C. § 524(j) a mortgagee with a lien on a debtor's principal residence is permitted to send statements to a debtor in the ordinary course of business, instead of seeking *in rem* relief, permitting the debtor to pay the secured debt and keep the property." *In re Gill*, 529 B.R. 31, 38 (Bankr. W.D.N.Y. 2015); *see also Lovegrove*, 2015 WL 5042913, at *7 ("[T]he Bankruptcy Code permits a [secured] creditor to send informational statements to a post-discharge debtor."); *Mele v. Bank of Am. Home Loans (In re Mele)*, 486 B.R. 546, 556 (Bankr. N.D. Ga. 2013) ("[S]ome post discharge communication is necessary and should be encouraged, especially in a case such as this" whether the discharged debtor stays in her home); *Schatz v. Chase Home Fin. (In re Schatz)*, 452 B.R. 544, 549–50 (Bankr. M.D. Pa. 2011) (explaining that "secured creditors should be encouraged to send informational statements to debtors in bankruptcy who may intend to keep the secured property"). And while a discharged debtor certainly may decide to make payment in response to such letters, *see* Doc. 1 at ¶ 19, that is a function of the debtor retaining possession of her home following her discharge and wanting to avoid being put out of it as a result of the lender's threatened foreclosure and sale of the property, which a secured lender on a defaulted mortgage has every right to do, even after a discharge. *See In re Hamlett*, 322 F.3d 342, 347 (4th Cir. 2003) ("[A] bankruptcy discharge of a secured creditor's claim does not affect the status of the creditor's underlying lien on the debtor's property.").

Applying Section 524(j), numerous federal courts have held that creditors and mortgage servicers may send monthly account statements and delinquency notices to discharged borrowers who have not reaffirmed their loans but have retained possession of the properties following discharge of personal liability on the debt, provided some disclaimer is included in the communications explaining that recovery is not being sought from them personally.[8]   Here, Ocwen's monthly account statements and delinquency notices contain such "bankruptcy disclaimer" language.  *See, e.g.*, Doc. 1-1 at 22, 24, (account statements); 25-27 (delinquency notices).   And federal courts have concluded that Ocwen's specific "bankruptcy disclaimer" language is sufficient to place discharged borrowers on notice that amounts are not being sought from them personally.  *See, e.g.*, *Lovegrove*, 2015 WL 5042913, at *6, 12-13; *LaCourse*, 2015 WL 1565250, at *9-13.

---

[8] *See, e.g., Best v. Nationstar Mortg., LLC (In re Best)*, 540 B.R. 1, 11 (1st Cir. B.A.P. 2015) (delinquency notices and monthly account statements sent to Chapter 7 discharged borrower did not violate the discharge injunction because each contained "bankruptcy disclaimer" language, such that "[e]ven a hypothetical unsophisticated consumer should understand … that the monthly statements [we]re not demands for payment") (quoting *Lemieux v. Am.'s Serv. Co. (In re Lemieux)*, 520 B.R. 361, 366 (Bankr. D. Mass. 2014)); *Pennington-Thurman v. Bank of Am., NA (In re Pennington-Thurman)*, 499 B.R. 329, 331-32 (8th Cir. B.A.P. 2014) (Chapter 7 discharge injunction not violated by post-discharge monthly statements sent to borrower because the statements included "bankruptcy disclaimer" language), *aff'd*, 559 F. App'x 600 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 728 (2014); *In re Gill*, 529 B.R. 31, 37-41 (Bankr. W.D.N.Y. 2015) (pre-foreclosure default notice did not violate Chapter 7 discharge injunction); *Giles v. James B. Nutter & Co. (In re Giles)*, 502 B.R. 892, 897, 901-03 (Bankr. N.D. Ga. 2013) (delinquency notices do not violate Chapter 7 discharge injunction); *In re Mele*, 486 B.R. at 557-58 (monthly account statements and payoff statements do not violate Chapter 7 discharge injunction, and when the debtor retains possession of her home following her discharge, "some post discharge communication is necessary and should be encouraged"); *Anderson v. Bank of Am.*, No. 12-cv-17, 2012 WL 4458474, at *2-4 (W.D. Va. July 11, 2012) (post discharge mortgage statement sent to borrower discharged under Chapter 7 did not violate the discharge injunction because it included "bankruptcy disclaimer" language); *Jones v. BAC Home Loans Serv., LP (In re Jones)*, Adv. Proc. No. 09-50281, 2009 WL 5842122, at *3 (Bankr. S.D. Ind. Nov. 25, 2009) (although monthly statements sent to Chapter discharged borrower included a payment coupon and loan balance information, statements did not violate discharge injunction because they included a "bankruptcy disclaimer" and were sent by a secured creditor entitled to continue communicating with the debtor under 11 U.S.C. § 524(j)); *Ramirez v. Gen. Motors Acceptance Corp. (In re Ramirez)*, 273 B.R. 620, 623-24 (Bankr. C.D. Cal. 2002) (monthly account statements do not violate Chapter 7 discharge injunction; instead such statements facilitate the purpose of 11 U.S.C. § 524(j) by "remind[ing] debtors that payments are due if the debtor wishes to avoid repossession" of the security interest).  *Accord Whitaker v. Bank of Am. (In re Whitaker)*, Adv. Proc. No. 13-5008, 2013 WL 2467932, at *7-9 (Bankr. E.D. Tenn. June 7, 2013) (monthly account statements did not violate Chapter 7 discharge injunction, even though statements did not include "bankruptcy disclaimer" language).

If that were not enough, loan servicers like Ocwen are not only permitted to send such statements and delinquency notices under Section 524(j), *but in fact they are required to do so by law and Bureau of Consumer Financial Protection directive.* *See, e.g.*, 12 C.F.R. § 1026.41(e)(5) (requiring periodic statements be sent to consumers, except during the pendency of their bankruptcy proceedings); 12 C.F.R. § 1026, Supp. I, *Official Staff Commentary on Regulation Z, § 1026.41(e)(5)* (directing a servicer to "resume sending periodic statements" and related delinquency notices to a consumer with respect to undischarged aspects of a mortgage "within a reasonably prompt time after the next payment due date that follows the earliest of any of three potential outcomes in the consumer's bankruptcy case: the case is dismissed, the case is closed, *or the consumer receives a discharge under 11 U.S.C. 727," e*.g., under Chapter 7 of the Bankruptcy Code. ) (emphasis added), *available at* 2014 WL 2195855.  And the Bureau recently published proposed rulemaking amendments that would not only continue to require monthly statements and delinquency notices be sent to a discharged borrower who retains possession of the collateral, but would further require that such statements and delinquency notices to be sent to consumers even while they remain in active bankruptcy proceedings.  *See* AMENDMENTS TO THE 2013 MORTGAGE RULES UNDER THE REAL ESTATE SETTLEMENT PROCEDURES ACT (REGULATION X) AND THE TRUTH IN LENDING ACT (REGULATION Z), 79 Fed. Reg. 74176 (proposed Dec. 15, 2014) (to be codified at 12 C.F.R. parts 1024 and 1026).

The monthly account statements and delinquency notices Ocwen sent Ms. Grant were permitted by Section 524(j) and required by law.  Where Section 524(j) has been followed, there is no violation of the discharge order.  *See* 11 U.S.C. § 524(j) ("Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim," provided Section 524(j)'s own subsections are followed).  Because all of Ms. Grant's causes of

action are premised on the demonstrably false premise that Ocwen's monthly account statements and delinquency notices violated her discharge order, her complaint is due to be dismissed for failure to state a claim upon which relief can be granted.   *See, e.g.*, *Lovegrove*, 2015 WL 5042913, at *13, 17; *LaCourse*, 2015 WL 1565250, at *12, 14; *Helman*, 85 F. Supp. 3d at 1327-28, 1332.

## CONCLUSION

For these reasons, Ocwen moves the Court to dismiss Ms. Grant's complaint and enter such other relief as the Court deems necessary and appropriate.

/s/ TIMOTHY A. ANDREU
Timothy A. Andreu
Florida Bar No. 443778
tandreu@babc.com
BRADLEY ARANT BOULT CUMMINGS LLP
100 S. Ashley Drive, Suite 1300
Tampa, Florida  33602
Telephone: (813) 229-3333
Facsimile:  (813) 229-5946

*Attorney for Defendant,*
*Ocwen Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will send a notice of electronic filing to all counsel of record.

/s/ TIMOTHY A. ANDREU
Attorney