UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GLENDA GRANT, f/k/a GLENDA RANDOLPH, individually and on behalf of a class of persons similarly situated,

    Plaintiff,

vs.

Case No.: 3:15-cv-01376-MMH-PDB

OCWEN LOAN SERVICING, LLC,

    Defendant.

_____/

## GRANT RESPONSE TO COURT'S ORDER FOR BRIEFING ON THE IMPACT OF SPOKEO V. ROBINS

Plaintiff, GLENDA GRANT, on behalf of herself and all others similarly situated, by and through undersigned counsel, files this brief in response to this Court's Order of May 11, 2016.

**1. Factual Background**

Ocwen Loan Servicing, LLC (OCWEN) unlawfully attempts to collect consumer debts from Plaintiff and the putative class in violation of the FDCPA and FCCPA. The debts in question were all mortgage debts that were previously discharged in Chapter 7 bankruptcy proceedings prior OCWEN's debt collection attempt. The named Grant mortgage debt was discharged on March 24, 2011. Pursuant to the Chapter 7 bankruptcy discharge order, Plaintiff was fully released from any and all personal monetary liabilities on the subject loan.

Sometime in late 2013, the Loan was transferred or assigned to OCWEN for servicing. The loan was in default at the time it was transferred to OCWEN, and it had been over two years since Plaintiff received a Chapter 7 discharge. Despite knowledge and actual notice that the debt was discharged and no longer valid, OCWEN continued to dun the Plaintiff and send

monthly "Account Statements" for an amount in excess of $137,000.00. The Account Statements reference, *"Mortgage Account Statement," "Total Amount Due,"* and *"Due Date: Due Now."* The "Account Statements" also contain payment instructions, a payment amount, a payment deadline, and a tear-away payment coupon. For example, Plaintiff's November 17, 2014 Account Statement represents that Plaintiff is to pay $137,615.63 as soon as possible (indicates "Due Now"), and even includes a tear-away payment coupon containing that amount and a blank space for "Total Enclosed," which shows OCWEN clearly contemplated payment from Plaintiff. Despite receiving a bankruptcy discharge in March 2011, Plaintiff received account statements and other correspondence every month since OCWEN acquired the rights to service the loan at issue.

In addition, OCWEN sent Plaintiff and other class members "Delinquency Notices," after she had filed for, and received, a bankruptcy discharge. For example, Grant's April 25, 2014 DELINQUENCY NOTICE states: "**You are late on your mortgage payments,**" "Failure to bring your loan current may result in fees and foreclosure – the loss of your home," "**Total: $51,181.99. You must pay this amount to bring your loan current.**" In addition, the DELINQUENCY NOTICE also states: "contact us for your current reinstatement amount or payoff amount," "This is an attempt to collect a debt."

### 2. Plaintiff has Article III Standing

Under *Spokeo* and long-established Supreme Court precedent, there should be no question that Mrs. Grant has Article III standing to bring her FDCPA claim against Ocwen. *Spokeo* specifically recognized that denial of accurate information, as Ms. Grant has alleged here, is "a sufficient injury in fact to satisfy Article III." 136 S. Ct. at 1549 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998)). And employing *Spokeo*'s framework, "both history and the judgment of Congress" confirm that Ms. Grant's injury is sufficiently

concrete. *Id.* In other words, because Ms. Grant was the "object of a misrepresentation made unlawful" by the FDCPA, she "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982).

In addition, as a result of Ocwen's misrepresentations, consumers like Ms. Grant face the risk of tangible harms—harms that Congress, with its "well positioned . . . judgment," meant to "elevat[e] to the status of legally cognizable injuries," *id.,* when it enacted the FDCPA, *see* 15 U.S.C. § 1692(a). This case is illustrative: By misrepresenting the legal status of post-discharge debts, Ocwen created a substantial risk that consumers like Ms. Grant would suffer real-world economic loss—loss of actual money that rightfully did not belong to Ocwen.

### 3. *Spokeo* did not change the requirements for Article III standing.

To have standing to bring a claim in federal court, the plaintiff must first have suffered an injury in fact. This requirement has two components: the injury must be both (1) particularized and (2) concrete.[1] In *Spokeo*, the Court reiterated core principles underlying the "concreteness" inquiry, which asks simply whether an injury "actually exist[s]." *Spokeo*, 136 S. Ct. at 1548. Elaborating, the Court in *Spokeo* distilled several "general principles" from its prior cases, without going beyond those cases. *Id.* at 1549. First, it acknowledged that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id.* at 1549–50. Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* So, if the "alleged intangible

---

[1] There is no question that Mrs. Grant's injury here is "particularized"—that it "affect[s] [her] in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quotation marks omitted). Like the plaintiff in *Spokeo*, Ms. Grant has alleged that Ocwen "violated [her] statutory rights" by falsely stating—in a dunning letter sent to *her*—that she owed debts which she no longer legally had to pay. *Id.*

3

harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court. *Id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

But the plaintiff need not dig up a common-law analogue to establish a concrete injury, because Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549. Accordingly, the third principle emphasized in *Spokeo* is that Congress can elevate even procedural rights to a concrete injury if they protect against an identified harm. Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. *Id.* But a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right, and may do so "without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992).

Critically, none of these principles are new: "*Spokeo* largely reiterated long-standing principles of Article III standing." *Chapman v. Dowman, Heintz, Boscia & Vician, P.C.*, 2016 WL 3247872, at *1 n.1 (N.D. Ind. June 13, 2016); *see* Amy Howe, *Opinion analysis: Case on standing and concrete harm returns to the Ninth Circuit, at least for now*, SCOTUSblog (May 16, 2016), http://bit.ly/1TB3vd1 (describing *Spokeo* as a "narrow" decision); Daniel J. Solove, Spokeo, Inc. v. Robins*: When Is a Person Harmed by a Privacy Violation?*, Geo. Wash. L. Rev. On the Docket (May 19, 2016), http://bit.ly/20fyAmS. And the Court in *Spokeo* did not even

4

apply these principles to the facts before it, choosing instead to remand the case to the Ninth Circuit, whose previous analysis was "incomplete" because it had "overlooked" concreteness. 136 S. Ct. at 1550. The Court, in other words, offered no assessment of the Ninth Circuit's analysis below, aside from its determination that the Ninth Circuit had failed to analyze concreteness as a separate step in the injury-in-fact inquiry.

Accordingly, *Spokeo* has done very little to change (or even clarify) the law; it simply summarizes the doctrine and provides examples of injuries that might (or might not) constitute sufficiently concrete harm. In any event, the injuries alleged here fall within the heartland of those typically sufficient for Article III injury; therefore, *Spokeo* should not alter this Court's conclusion that the Grant have standing to bring their FDCPA claims.

### 4. Ocwen's misrepresentation denied Ms. Grant access to truthful information—a concrete form of informational injury.

Applying these principles here leads to one conclusion: Ms. Grant has sufficiently established concreteness. The informational injury that Ocwen inflicted—and the risk of harm it created—is (1) recognized as concrete by Supreme Court precedent, (2) closely related to traditionally actionable harms, and (3) among the evils that Congress targeted when it enacted the FDCPA. Each reason, independently, is a basis for standing here.

#### A. Supreme Court precedent—including *Spokeo* itself—recognizes informational injury as a concrete injury.

Ms. Grant claims that Ocwen sent her communications clearly asserting that she owed a debt based on her mortgage loan, even though this debt was discharged in bankruptcy. [Complaint par. 12-14]. This conduct, she further contends, violates section 1692e of the FDCPA—and in particular, section 1692e(2)(A), which prohibits "[t]he false representation of . . the character, amount, or legal status of any debt." There is no doubt under *Spokeo* and

5

longstanding precedent that Ms. Grant has sufficiently alleged a cognizable informational injury—the denial of her right to truthful information—for standing purposes.

In *Spokeo*, the Court confirmed that informational injury—being denied access to information to which an individual is entitled by statute—is a concrete injury under Article III. *See* 136 S. Ct. at 1549–50. And, the Court made clear, the denial of that information is on its own sufficiently concrete; "a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* at 1549.

In support of this principle, the Court reaffirmed its past precedent, citing *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989), which held that the plaintiff had standing to challenge the Justice Department's failure to provide access to information, the disclosure of which was required by the Federal Advisory Committee Act. The inability to obtain such information, the Court explained there, "constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. Likewise, the *Spokeo* Court invoked *Federal Election Commission v. Akins* for a similar point, "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549–50 (citing *Akins*, 524 U.S. 11, 20–25 (1998)).

Ms. Grant has suffered that very injury. Under the FDCPA, consumers like Ms. Grant have a statutory right to truthful information concerning the debt-collection process. Indeed, Congress made that abundantly clear, specifically mandating that debt collectors may not "false[ly] represent[] . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The harm that Ms. Grant has alleged is, in other words, exactly the harm Congress targeted by enacting the FDCPA: false information regarding the "character" and "legal status"

6

of her discharged debt. Thus, Ms. Grant (and those similarly situated) "need not allege any additional harm" to satisfy Article III's concreteness requirement. *Spokeo*, 136 S. Ct. at 1549.

The Supreme Court has recognized this form of injury for more than three decades. In *Akins*, the Court held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." 524 U.S. at 21. *Akins* in turn cited *Havens Realty Corp. v. Coleman*, in which the Court held that a housing-discrimination "tester" had standing based on a violation of "[his] statutorily created right to truthful housing information." 455 U.S. 363, 374 (1982); *see also Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009). A "tester who has been the object of a misrepresentation made unlawful under [the statute]," the Court explained, "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Havens*, 455 U.S. at 373–74.

So too here. Ms. Grant has shown that she was "the object of a misrepresentation made unlawful under" section 1692e of the FDCPA. *Id.* Indeed, the case for standing is stronger here than in *Havens*: whereas the tester in *Havens* "fully expect[ed] that he would receive false information," *id.*, Ms. Grant *believed* Ocwen's misrepresentations. Accordingly, Ms. Grant "has suffered injury in precisely the form the [FDCPA] was intended to guard against, and therefore has standing." *Havens*, 455 U.S. at 373–74.

### B. Misrepresentations about discharged debt are among the real-world harm that Congress targeted in the FDCPA.

*Spokeo* observed that, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements," its "judgment" is both "instructive and important." 136 S. Ct. at 1549. All that is required is that Congress "identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." *Massachusetts v. E.P.A.*, 549

U.S. 497, 516 (2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580 (1992) (Kennedy, J., concurring)).

That is the case here. In enacting the FDCPA, Congress "elevat[ed]" these "concrete, de facto" informational injuries "to the status of legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. Its aim was "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Congress concluded that "[e]xisting laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c). Further, Congress found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C.A. § 1692(a).

Section 1692e(2)(A), in particular, expressly seeks to protect consumers from "false representation[s]" about the character and legal status of their debts. And "[s]ending a collection letter indicating that a certain debt is due and payable when the debt has actually been discharged in bankruptcy constitutes a false representation about the legal status of the debt, and is a violation of the FDCPA under the plain language of the statute." *Eide v. Colltech, Inc.*, 987 F. Supp. 2d 951, 962-63 (D. Minn. 2013); *see also Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) ("[A] demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although . . . it is not."); *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 576 (W.D. Va. 2013) ("One type of misrepresentation prohibited by § 1692e(2)(A) is the false representation that a debt exists."). Indeed, this Court has recognized the same. *See Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1331-32 (M.D. Fla. 2010).

This Court should respect Congress's considered "judgment," and conclude that Ms. Grant has Article III standing on her FDCPA claims. *Spokeo*, 136 S. Ct. at 1549. Any other conclusion would threaten the FDCPA's private-enforcement scheme, thwart Congress's purposes, and erect a barrier to Article III standing that is out of step with controlling precedent.

### C. False representations have long been actionable under the common law.

Although a Plaintiff's claim need not have a historical pedigree to establish standing, here the harm suffered by Ms. Grant has "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. At common law, sellers of goods and services face certain obligations of disclosure. *See* Restatement (Second) of Torts, § 551(2) (defining "Liability for Nondisclosure"). Thus, a failure to convey relevant information may violate the common law of contract or tort. *See generally* Kathryn Zeiler & Kimberly D. Krawiec, *Common-law Disclosure Duties and the Sin of Omission*: Testing Meta-Theories 91 Va. L. Rev. 1795 (2005). And in some instances, failure to disclose information that is material to a transaction- could constitute misrepresentation or fraud. *See* Restatement (Second) of Torts § 525 (Liability for Fraudulent Misrepresentation); *id.* § 529 (Representation Misleading Because Incomplete).

To be sure, under common law, some of these actions required a showing of pecuniary or other harm. Nevertheless, common-law courts recognized that the failure to disclose information was the type of harm that could be vindicated in court. Congress's decision to relax the proof requirements does not negate the fact that courts have historically recognized false disclosure of information—as well as nondisclosure—as a distinct, cognizable injury. In other words, that Congress, with the FDCPA, may have replaced the remedy with statutory damages does not

9

break the "close relationship" that the FDCPA claims have with traditional common law duties requiring disclosure of truthful information.

Dated: June 24, 2016            **VARNELL & WARWICK, P.A.**

                                       s/ Janet R. Varnell
                                       JANET R. VARNELL, Florida Bar No.: 0071072
                                       BRIAN W. WARWICK, Florida Bar No.: 0605573
                                       STEVEN T. SIMMONS, JR., Florida Bar No.: 0091654
                                       P.O. Box 1870
                                       Lady Lake, FL 32158
                                       Telephone: (352) 753-8600
                                       Facsimile: (352) 504-3301
                                       *jvarnell@varnellandwarwick.com*
                                       *bwarwick@varnellandwarwick.com*
                                       *ssimmons@varnellandwarwick.com*
                                       *kstroly@varnellandwarwick.com*
                                       *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 24th day of June, 2016, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send a notice of electronic filing to the following counsel of record:

Michael R. Pennington
Timothy A. Andreu
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
mpennington@babc.com
tandreu@babc.com

Attorneys for Defendant

                                                    /s/ Janet R. Varnell
                                                    **JANET R. VARNELL**