**DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GLENDA    GRANT,    f/k/a    GLENDA
RANDOLPH, individually and on behalf of a
class of persons similarly situated,

               Plaintiff,                    CASE NO.: 3:15-cv-01376-MMH-PDB

vs.

OCWEN LOAN SERVICING, LLC,

               Defendant.

_____/

---

**DEFENDANT OCWEN LOAN SERVICING, LLC'S**
**MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS**
**ACTION SETTLEMENT**

---

Timothy A. Andreu
Florida Bar No. 443778
tandreu@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
100 N. Tampa Street, Suite 2200
Tampa, Florida  33602
Phone: (813) 559-5500
Fax:  (813) 229-5946

Michael R. Pennington (pro hac vice)
mpennington@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35173
Phone: (205) 521-8000
Fax: (205) 521-8800

Attorneys for Defendant,
Ocwen Loan Servicing, LLC

# TABLE OF CONTENTS

I.   THE SETTLEMENT IS A COMPROMISE OF DISPUTED CLAIMS ................................. 3

II.   BACKGROUND ............................................................................................................. 7

III.   THE PRIMARY TERMS OF THE SETTLEMENT ......................................................... 10

   A.   The Proposed Settlement Class .................................................................................. 10

   B.   Notice and Settlement Administration ...................................................................... 10

   C.   Opt-Out Provisions .................................................................................................... 11

   D.   Relief Provisions ........................................................................................................ 11

   E.   Release ....................................................................................................................... 12

   F.   Class Representative Service Award .......................................................................... 13

   G.   Attorneys' Fees and Expenses ................................................................................... 13

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 14

   A.   The Role of the Court ................................................................................................ 15

   B.   The Criteria for Preliminary Approval ...................................................................... 16

   C.   The Settlement is Procedurally Fair .......................................................................... 18

   D.   The Settlement is Substantively Fair ......................................................................... 21

V.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD
     OF NOTICE TO THE CLASS MEMBERS ................................................................... 26

   A.   The Content of the Proposed Notice is Appropriate .................................................. 28

   B.   The Plan for Disseminating the Notice is Also Appropriate ..................................... 30

CONCLUSION ..................................................................................................................... 32

Ocwen Loan Servicing, LLC ("Ocwen") respectfully submits this memorandum in support of the preliminary approval of the Parties' proposed Stipulation of Settlement and Release (Doc. 84-1, the "Settlement").[1]

## I.    THE SETTLEMENT IS A COMPROMISE OF DISPUTED CLAIMS

Ocwen both originates home mortgage loans and services such loans on behalf of others. Loan servicing is highly regulated by federal statutes and regulations, and generally involves the day-to-day management of borrower mortgage loan accounts, including collecting and crediting borrowers' monthly loan payments. *See generally* https://www.consumer.ftc.gov/articles/0190-making-payments-your-mortgage-servicer (last visited Apr. 17, 2018).

The collection and crediting of borrower payments is primarily regulated by the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), and Regulation Z, 12 C.F.R. §§ 1026.1, *et seq.* Among other things, TILA and Regulation Z require mortgage servicers to provide borrowers—including many members of the proposed Settlement Class, who have been discharged in bankruptcy but retain possession and/or title to their homes—with a periodic monthly account statement. *See, e.g.*, 12 C.F.R. § 1026.41. Regulation Z also tightly controls the format and content of such periodic statements. *Id.* at § 1026.41(d). During the time period relevant to this Action, the Consumer Financial Protection Bureau had approved only one form of periodic monthly statement for mortgage servicers to use with delinquent borrowers on a closed-ended loan such as a home mortgage loan. *See* 12 C.F.R. § 1026, App'x H, Form H-30(B).

Other statutes and regulations govern a mortgage servicer's communications with

---

[1]  Ocwen employs certain capitalized words and phrases in this memorandum that are defined in Section 2 of the Parties' proposed Settlement.

borrowers in default.  For example, where servicing rights to a loan are acquired by a mortgage servicer while that loan is in default, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), will apply.  Among other things, the FDCPA prohibits persons attempting to collect on a debt from making false or misleading representations about the character, amount or legal status of that debt.  *See* 15 U.S.C. § 1692e(2)(A).  And when dealing with borrowers in default, mortgage servicers must also comply with the loss mitigation requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*, and Regulation X, 12 C.F.R. §§ 1024.1, *et seq.*, which require, among other things, that mortgage servicers provide borrowers in default with delinquency notices containing specified format and content.  *See, e.g.*, 12 C.F.R. § 1024.39.

The original complaint in this Action was filed on November 17, 2015 (Doc. 1), and an amended complaint—the Operative Complaint—was filed on May 4, 2018.  (Doc. 81).  In those complaints, Plaintiff Grant alleges that Ocwen violated Section 1692e(2)(A) of the FDCPA by sending periodic monthly statements and delinquency notices to borrowers who had previously received Chapter 7 discharges in bankruptcy of personal liability on their home mortgage loans because, in her view, such correspondence improperly suggests that discharged borrowers remain personally obligated to continue making payments on their home loans.  Violations of the FDCPA allow successful borrowers two kinds of damages: actual damages as proven by the claimant, and statutory damages on a classwide basis.  15 U.S.C. § 1692k(a).

It is undisputed that the form and content of Ocwen's Monthly Statement, as used during the relevant time period, closely paralleled Regulation Z's Form H-30(B) and contained the disclosures required by TILA and Regulation Z.  *See* Declaration of James Thomas Broome, Jr. In Support of the Preliminary Approval of Stipulation of Settlement and Release (Doc. 82-1, the

"Broome Decl.") at ¶ 7.  It is also undisputed that Ocwen's Monthly Statements and Delinquency Notices during the relevant time period included bankruptcy disclaimer language, explaining that persons who had been discharged in bankruptcy should consider the correspondence to be for informational purposes only.  *Id.*[2]  The central issue in this Action is whether mortgage servicers like Ocwen violate the FDCPA when they send periodic monthly statements and delinquency notices with such content to borrowers who have been discharged in bankruptcy from personal liability on their home loan debt, but whose property remains subject to a mortgage lien that has not been satisfied or released through foreclosure or otherwise.

Unfortunately, federal courts are divided on how this central issue should be resolved.  In this District, for example, a number of judges have concluded that whether a periodic monthly statement sent to a discharged borrower represents an attempt to collect a debt personally from the debtor (and thus constitutes a violation of the FDCPA), is a triable factual issue, even if the periodic monthly statement is based on Regulation Z's Form H-30(B) and includes bankruptcy disclaimer language like that used by Ocwen.[3]  On the other hand, the Fourth Circuit has affirmed the outright dismissal of similar FDCPA claims *against Ocwen itself*, finding that the standard bankruptcy disclaimer language contained in *Ocwen's own* periodic monthly statements and related correspondence placed even the least sophisticated consumer on notice "that Ocwen was not attempting to collect a debt from him."  *Lovegrove v. Ocwen Loan Serv., LLC*, 666 F. App'x 308,

---

[2] *See also* Doc. 1-1 at 24 (disclosing in Monthly Statement that "if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally."); *id.* at 25 (same, in Delinquency Notice).

[3] *See, e.g.*, *Sellers v. Rushmore Loan Mgmnt. Serv., LLC*, No. 3:15-cv-1106-J-32PDB, 2017 WL 1683613, at *6-7 (M.D. Fla. May 3, 2017); *Prindle v. Carrington Mortg. Serv., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4466838 (M.D. Fla. Aug. 24, 2016); *Roth v. Nationstar Mortg., LLC*, No. 2:15-cv-783-FtM-29MRM, 2016 WL 3570991, at *4 (M.D. Fla. July 1, 2016).

312 (4th Cir. Dec. 20, 2016).  As the Fourth Circuit explained, "the FDCPA [wa]s not [even] implicated" by Ocwen sending out periodic monthly statements because, "[e]ven though the monthly statements generally request payments, we believe that the disclaimer is sufficient to provide notice that, for consumers in bankruptcy, Ocwen was providing an updated account summary and not demanding payment." *Id.* & n.5.  The District of Connecticut and District of New Hampshire have reached similar conclusions, finding that ***Ocwen's own*** periodic monthly statements do not even implicate the FDCPA or debt collection when sent to discharged borrowers, because of the bankruptcy disclaimer language contained within those statements. *Thompson v. Ocwen Fin. Corp.*, No. 16-cv-1606, 2018 WL 513720, at \*5 (D. Conn. Jan. 23, 2018); *LaCourse v. Ocwen Loan Serv., LLC*, No. 14–cv–13, 2015 WL 1565250, at \*11-12 (D.N.H. Apr. 7, 2015).

Accordingly, Ocwen has vigorously defended this case to date because it believed it could not properly be found liable under the FDCPA for sending discharged borrowers the same monthly account statements and related correspondence with the same bankruptcy disclaimer language that the Fourth Circuit, District of Connecticut and District of New Hampshire have concluded cannot give rise to an FDCPA claim.  If it had been found liable, Ocwen would certainly have appealed because, after all, Congress' intent in passing the FDCPA was "to promote consisten[cy]" in debt collection standards and practices—not pass a statute that could be applied varyingly by different federal courts based on the same set of facts and circumstances against the same defendant.  15 U.S.C. § 1692.  However, any debate over how the central issue in this Action should be resolved, and whether Ocwen's past correspondence with discharged borrowers was properly structured, is now largely moot—the Consumer Financial Protection Bureau amended Regulation Z during the course of this Action to specifically establish the now-required form and content of periodic monthly statements to discharged borrowers, with such amendments having taken effect April 19,

2018.  *See generally* Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72,160 (Oct. 19, 2016).  Ocwen is now using the forms proffered by the Consumer Financial Protection Bureau through such rulemaking, thereby foreclosing any prospective civil claims or liability for use of such forms.  (Broome Decl. at ¶¶ 8-9).  Moreover, Ocwen's policies and procedures currently suppress the generation and dissemination of Delinquency Notices to persons Ocwen's records reflect have received a Chapter 7 discharge in bankruptcy.  (*Id.* at ¶ 10).  Therefore, from Ocwen's perspective, what remains is how best to address the potential retroactive liability and uncertainty caused by federal courts' varied prior approaches to resolution of this issue up to now.

Recognizing that the outcome of any litigation is inherently uncertain, that continued litigation will inherently involve numerous risks, uncertainties and continued litigation costs (including significant potential appeal costs and delays), and that any dispute over the proper format and content of periodic statements to borrowers has now been resolved through rulemaking by the Consumer Financial Protection Bureau, Ocwen has now agreed to settle this Action with Plaintiff Grant pursuant to the terms and provisions of the Parties' proposed Settlement.

## II.    BACKGROUND

Plaintiff Grant filed this Action on November 15, 2015.  (Doc. 1).  Ocwen moved to dismiss Plaintiff Grant's complaint on January 15, 2016.  (Doc. 6).  The Court denied Ocwen's motion on September 12, 2016.  (Doc. 39).  Ocwen then answered Plaintiff Grant's original complaint, generally denying her allegations and raising a number of affirmative and procedural defenses to her claims.  (Doc. 40).  Ocwen contemporaneously moved for entry of a partial judgment on the pleadings with respect to Plaintiff Grant's FCCPA claim, based on prior decisions of this Court finding that similar FCCPA claims are preempted by the Bankruptcy Code under factually

identical circumstances to this Action.[4]

The Court entered a case management order on October 11, 2016, triggering the commencement of discovery. (Doc. 43). Through discovery, Ocwen produced several thousand pages of documents to Plaintiff Grant regarding, among other things, Ocwen's: (a) Chapter 7 bankruptcy compliance policies and procedures, and associated training materials; (b) Monthly Statement policies and procedures, including information on the content, disclosures and disclaimers included within Monthly Statements for loans in active and completed bankruptcy proceedings, as well as for loans in default and/or in foreclosure proceedings; (c) FDCPA compliance policies and procedures, and associated training materials; and (d) Chapter 7 bankruptcy process manual. (Settlement at ¶ 1.4). Ocwen also produced data to Plaintiff Grant regarding the number of borrowers potentially sent Monthly Statements on or after November 2014 based on the definition of her originally-proposed class. (*Id.*). Following the production of such information, Plaintiff Grant deposed an Ocwen representative regarding a variety of topics, including Ocwen's procedures for identifying bankruptcy filings and discharges on borrowers' accounts, and Ocwen's procedures for distributing Monthly Statements, including the content, disclosures and disclaimers contained therein, particularly with respect to borrowers who had previously received Chapter 7 discharges in bankruptcy of personal liability on their loans. (*Id.*).

Following such discovery, and in an effort to comply with the Court's ADR requirements, the Parties sought a stay of the Action in order to allow them to participate in mediation. (Doc. 63). That stay was granted on June 27, 2017 (Doc. 64), and as mediation progressed and continued,

---

[4] *See* Doc. 42 (citing Minute Entry, *Prindle v. Carrington Mortgage Services, LLC*, Case No. 3:13-cv-1349-J-34PDB (M.D. Fla., entered Sept. 25, 2015), ECF No. 97; Minute Entry, *Carman v. Green Tree Servicing, LLC*, Case No. 3:14-cv-1224-J-34MCR (M.D. Fla., entered Sept. 25, 2015), ECF No. 37; Telephonic Motion Hearing Transcript, *Prindle v. Carrington Mortgage Services, LLC*, Case No. 3:13-cv-1349-J-34PDB (M.D. Fla., entered Oct. 23, 2015), ECF No. 99)).

that stay was extended by the Court on several occasions.  (Docs. 68, 70, 73, 75, 77, 79).

The Parties' mediation efforts included two separate mediation sessions held on July 27, 2017 and October 16, 2017—all of which were conducted and overseen by independent mediator Terrence M. White of Upchurch Watson White & Max, with continuing exchanges by the Parties of informal discovery and confirmatory due diligence information and data.  (Settlement at ¶ 1.6; *see also* Docs. 66-1, 72-1; 76).

Based on the results of Class Counsel's investigation and the Parties' cooperative due diligence efforts, Plaintiff Grant concluded that her FCCPA claim was not well suited for class treatment based on the prior precedent of this Court, which had dismissed substantively identical FCCPA claims in similar cases based on Bankruptcy Code preemption of such state law claims (Settlement at ¶ 1.8; *see also* note 4 *supra*).  Plaintiff Grant and Class Counsel further concluded that her FDCPA claim seeking, inter alia, statutory damages, was the most appropriate vehicle for class adjudication by settlement or by litigation, and indeed was an appropriate basis for nationwide class adjudication.  (*Id.*).  Therefore, based on the results of her continuing investigation and the Parties' cooperative due diligence efforts, Plaintiff Grant filed the Operative Complaint on May 4, 2018.  Therein, she elected to not reassert her FCCPA claim, but reasserted her FDCPA claim on behalf of a nationwide class of borrowers in order to capture all loans potentially affected by the central issue in this Action—in other words, "[a]ll borrowers on home mortgage loans who were sent a Monthly Statement and/or Delinquency Notice by Ocwen Loan Servicing, LLC between November 17, 2014 and April 19, 2018 while their loan was flagged in Ocwen's loan servicing system as having received a Chapter 7 bankruptcy discharge."  (Doc. 81 at ¶ 18; *accord* Settlement at ¶ 2.1.30).

### III.     THE PRIMARY TERMS OF THE SETTLEMENT

Subject to Court approval and the individual right to opt out, the proposed Settlement will resolve all claims of Ms. Grant and the Settlement Class against Ocwen arising from their receipt of Monthly Statements and Delinquency Notices.  The details are contained in the parties' Settlement, the primary terms of which are described below.

### A.     The Proposed Settlement Class

The proposed Settlement Class comprises the 196,200 borrowers on the 137,636 Class Loans at issue in this Action, and is defined as:

> [A]ll borrowers on home mortgage loans who were sent a Monthly Statement and/or Delinquency Notice by Ocwen Loan Servicing, LLC between November 17, 2014 and April 19, 2018 while their loan was flagged in Ocwen's loan servicing system as having received a Chapter 7 bankruptcy discharge.

(Settlement at ¶ 2.1.30; *see also* Broome Decl. at ¶ 6).  Excluded from the Settlement Class are: "(i) Ocwen's board members and executive level officers; (ii) persons who timely and properly exclude themselves from the Settlement Class as provided in this Agreement' and (iii) the federal district and magistrate judges assigned to this Action, along with their spouses and persons within the third degree of relationship to them."  (Settlement at ¶ 2.1.30).

### B.     Notice and Settlement Administration

The Parties have agreed to the appointment of Class-Settlement.com to act as the Settlement Administrator and to, among other things, provide notice to the proposed Settlement Class.  (Settlement at ¶ 2.1.29).  The costs of distributing notice and for settlement administration are to be paid separately by Ocwen, outside of, and in addition to, the Settlement Fund being offered to Settlement Class Members.  (*Id.* at ¶ 4.4).

Notice will be distributed to the Settlement Class by U.S. First-Class Mail, based on address information contained in Ocwen's business records and as supplemented by skip-tracing

for all Class Loans that were no longer being serviced by Ocwen as of the Class Roster Date. (Settlement at ¶¶ 5.2.1, 5.2.2).  Under the Settlement, notice will be distributed within twenty-one (21) days after entry of a Preliminary Approval Order (*Id.* at ¶ 5.2.2), and Settlement Class Members will then have ninety-four (94) days within which to decide to remain in the Settlement Class, or opt out of it, or object to the Settlement.[5]

### C.   Opt-Out Provisions

The Settlement allows any Settlement Class Members to opt-out of the Settlement and the Settlement Class.  (Settlement at ¶¶ 6.1 – 6.4).  Any Settlement Class Member who wishes to seek exclusion from the Settlement Class will be advised of his or her right to be excluded, and of the deadline and procedures for exercising that right.  (*Id.* at ¶ 5.2.3.3; *see also id.* at Ex. A).  As noted above, the timetable proposed by the Settlement will afford members of the Settlement Class with over 90 days within which to decide whether to remain in the Settlement Class, or to seek exclusion from it.  Those who wish to pursue actual damages or higher individual statutory damages can do so by opting out, and this is a meaningful opportunity since the FDCPA allows successful plaintiffs the right to recover costs and their reasonable attorneys' fees.  15 U.S.C. § 1692k(a)(3).

### D.   Relief Provisions

The Settlement offers relief in the form of Individual Allocations from a Settlement Fund to those Settlement Class Members who do not exclude themselves from the Settlement Class.  No action is required of such persons to receive such relief.  Under the Settlement, Ocwen has agreed

---

[5] The Settlement provides that the deadline for Settlement Class Members to exclude themselves from or object to the Settlement will be thirty-five (35) days before the Fairness Hearing (Settlement at ¶ 2.1.18), and that the Fairness Hearing should not be held "earlier than one hundred and fifty (150) days after the date of entry of the Preliminary Approval Order."  (*Id.* at ¶ 2.1.12).  As a result, Settlement Class Members will be afforded at least ninety-four (94) days within which to request exclusion from the Settlement Class or object to the Settlement (*i.e.*, 150 days – 35 day objection/opt out deadline = 115 days from entry of Preliminary Approval Order; 115 days – 21 days to distribute notice following entry of Preliminary Approval Order = 94 day response period).

to establish a $500,000.00 non-reversionary Settlement Fund. (Settlement at ¶¶ 2.1.32, 4.2.1 – 4.2.5). This amount equals the maximum statutory damages recoverable for a class under the FDCPA. 15 U.S.C. § 1692k(a)(2)(B). Within twenty (60) days of the Settlement's Final Settlement Date, the Settlement Fund will then be allocated to and between all Settlement Class Members who do not exclude themselves based on the number of loans remaining at issue within the Settlement Class. (Settlement at ¶ 4.2.2). Assuming the Court approves the Settlement, and also assuming that no one opts out of the Settlement Class, such relief should amount to approximately $3.63 per loan (*e.g.*, $500,000 Settlement Fund ÷ 137,636 Class Loans).

Individual Allocations will be paid by check (Settlement at ¶ 4.2.3). All such checks will state on their face that they will expire and become stale, null and void unless cashed within one hundred and twenty (120) days after the date of issuance of the check. (*Id.* at ¶ 4.2.4). A Settlement Class Member's failure to cash such a check within 120 days will constitute a waiver of her right to receive such relief, and unclaimed funds will then be aggregated and paid to a designated *cy pres* recipient. (*Id.*).

### E.    Release

In exchange for the relief described above, and upon entry by the Court of a Final Order and Judgment approving the Settlement, Plaintiff Grant and the Settlement Class will release Ocwen and certain of its related and affiliated entities (the "Released Parties," as described in Paragraph 2.1.27 of the Settlement) of, among other things, all claims related to their receipt of Monthly Statements and Delinquency Notices sent by Ocwen on or after November 17, 2014, and after their personal liability on the loan was discharged in a Chapter 7 bankruptcy. (Settlement at ¶ 8.1). In other words, the Settlement contemplates a release specific to the subject matter addressed in this Action, and does not contemplate a general release of any and all claims of any

kind against Ocwen.  The Settlement will also not alter, extinguish, release or modify the terms of the Settlement Class Members' loans which are still in effect as of the Final Settlement Date, nor prohibit Ocwen from continuing to service such loans consistent with the terms of those agreements and the terms of any applicable Chapter 7 discharge orders that were previously entered on behalf of the Settlement Class Members.  (*Id.* at ¶ 8.6).

### F.   Class Representative Service Award

Under the Settlement, Class Counsel have reserved the right to seek a reasonable Service Award, not to exceed $3,500.00, to be paid to Plaintiff Grant for her service as the named representative of the Settlement Class.  (Settlement at ¶ 9.2).  Any Service Award approved by the Court up to that amount will be paid separately by Ocwen from the relief being offered to the members of the Settlement Class, and would be in addition to any relief Plaintiff Grant may receive as a member of the Settlement Class.  (*Id.* at ¶ 4.3).  The Service Award is intended to recognize the time and effort expended by Plaintiff Grant on behalf of the Settlement Class in assisting Class Counsel with the prosecution of this case and negotiating the relief the Settlement proposes to confer to the Settlement Class Members, as well as the exposure and risk Plaintiff Grant incurred by participating in and taking a leadership role in this Action.  (*Id.* at ¶¶ 2.1.28, 9.2).  The Settlement is not conditioned upon the Court approving any Service Award to Plaintiff Grant.  (*Id.* at ¶ 9.6).

### G.   Attorneys' Fees and Expenses

Under the Settlement, Class Counsel has also reserved the right to petition the Court for an award of reasonable attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this case, in an amount not to exceed $150,000.00.  (Settlement at ¶ 9.1).  The Attorneys' Fees and Expenses provision was separately and independently negotiated by the

Parties apart from the class settlement provisions, in an arm's-length negotiation overseen by Terrence M. White, acting as mediator.   (Declaration of Brian W. Warwick, filed contemporaneously herewith ("Warwick Decl."), at ¶ 15; *accord* Settlement at ¶¶ 1.5-1.7).   Any Attorneys' Fees and Expenses awarded by the Court up to this amount will be paid separately by Ocwen from the relief being offered to the Settlement Class Members.   (Settlement at ¶ 4.3).   The Settlement is not conditioned upon any Attorneys' Fees and Expenses award being approved by the Court.   (*Id.* at ¶ 9.6).

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

Under Rule 23, the Court must make a "preliminary fairness evaluation" of the Parties' proposed Settlement based on the "briefs, motions [and] informal presentations by parties." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 at 320-21 (2004).   Here, the Court should preliminary approve the Settlement not only because public policy favors the settlement of complex class actions such as this one,[6] but also because the Settlement offers real and reasonable relief very similar to the remedies available to the Settlement Class if Class Counsel were able to successfully obtain certification of a litigation class and then litigate this mater through trial, maintain a judgment through the appeals process, and overcome the fact that at least three federal courts have concluded that the bankruptcy disclaimer language used by Ocwen in its Monthly Statements and other correspondence when sent to discharged borrowers cannot give rise to liability under the FDCPA.   At the same time, the Settlement allows every Settlement Class

---

[6]  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "the strong judicial policy in favor of settlements, particularly in the class action context."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (there is a "strong presumption in favor of voluntary settlement agreements" which is "especially strong in class actions and other complex cases"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

Member who is dissatisfied with the Settlement's terms, wishes to pursue any claimed individualized actual damages, or who wishes to take advantage of higher individual statutory damage awards offered by the FDCPA to individual litigants, to exclude himself or herself from the Settlement Class in order to pursue his or her own lawsuit against Ocwen.

### A.   The Role of the Court

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a class action basis. Such review involves a well-established two-step process involving (1) preliminary approval of the settlement and the method and form of class notice; and (2) final approval after notice and a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The purpose of the first step of preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id*. at 621 n.3. In this regard, the Settlement should be preliminarily approved if it (i) "appears to fall within the range of possible approval," and (ii) "does not disclose grounds to doubt its fairness or other obvious deficiencies." *In re Inter-Op Hip Prosthesis Liab. Litig*., 204 F.R.D. 330, 350 (N.D. Ohio 2001); *see also Family Med. Pharm., LLC v. Holdings*, No. 15-cv-0563, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016) ("Preliminary approval of a proposed class action settlement does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member. During the preliminary approval process, the court simply determines whether the proposed settlement falls within the range of possible approval."); *Smith v. Wm. Wrigley Jr. Co*., No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

Approval of a proposed class action settlement is a matter within the discretion of the court. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Such discretion is conferred in recognition that "evaluation of [a] proposed settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations and rough justice." *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1385 (S.D.N.Y. 1972), *rev'd on other grounds by* 495 F.2d 448 (2d Cir. 1974*); see also Poertner v. Gillette Co.*, 618 F. App'x 624, 627 (11th Cir. 2015) ("Discretion means that the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'"), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453 (2016). In exercising that discretion, courts have recognized that as a matter of sound public policy, settlements of disputed claims are encouraged and the settlement approval process should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."); *accord In re U.S. Oil and Gas Litig.*, 967 F.2d at 493 ("Public policy strongly favors the pretrial settlement of class action lawsuits."). Recognizing that a settlement represents an exercise of judgment by the parties, it has been consistently held that the function of a court reviewing a settlement is neither to rewrite the parties' agreement nor to try the case by resolving issues left unresolved by the settlement. *See, e.g.*, *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983) ("Courts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by the parties.").

### B. The Criteria for Preliminary Approval

To grant preliminary approval, the Court need only find that the terms of the Settlement

fall within the range of possible final approval.  MANUAL FOR COMPLEX LITIGATION (FOURTH) 21.632 at 320-21; *accord Lazy Oil Co. v. Wotoco Corp*., 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*., 166 F.3d 581 (3d Cir. 1999) (in considering a class settlement, the proper inquiry is "whether the recovery falls within th[e] range of reasonableness, not whether it is the most favorable possible result of litigation") (citation omitted).  The range "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Corrugated Container Antitrust Litig*., 659 F.2d 1322, 1325 (5th Cir. 1981) ("[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness.").

Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable." *Shy v. Navistar Int'l Corp*., No. 92-cv-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) (citation omitted).  The Court need simply "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation," because it is "proper to take the bird in hand instead of a prospective flock in the bush." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Accordingly, the relevant inquiry is "whether the recovery falls within that range of reasonableness, [and] not whether it is the most favorable possible result of litigation." *Lazy Oil Co*., 95 F. Supp. 2d at 338.  In addition, courts should also assess whether "the proposed settlement appears to be the product of serious, informed, non–collusive negotiations," and whether it

"improperly grant[s] preferential treatment to class representatives or segments of the class" to ensure the Settlement's procedural fairness. *In re NASDAQ Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

In making any preliminary approval determination, the Court need not reach any ultimate conclusions on the substantive factual or legal issues presented in the case. *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981) (in considering whether to approve a class settlement, courts "do not decide the merits of the case or resolve unsettled legal questions"). "It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the Court try the case which is before it for settlement . . . such procedure would emasculate the very purpose for which settlements are made." *Grinnell Corp*., 495 F.2d at 462. Nor should the court "make the proponents of the agreement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972).

### C.      The Settlement is Procedurally Fair

To warrant preliminary approval, the terms of a class action settlement should reveal that it is "the product of serious, informed, non-collusive negotiations." *In re NASDAQ Market-Makers Antitrust Litig*., 176 F.R.D. at 102. In making this determination, courts begin with a presumption of good faith in the negotiating process. *See Lee v. Ocwen Loan Serv., LLC*, No. 14-cv-60649, 2015 WL 5449813, at*11 (S.D. Fla. Sept. 14, 2015) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("There is a presumption of good

faith in the negotiation process.").[7]

Here, the Settlement Fund amount happens to equal the maximum amount a prevailing class can recover in statutory damages under the FDCPA. 15 U.S.C. § 1692k(a)(2)(B). That amply demonstrates the absence of collusion.

Moreover, the record supports the procedural fairness of the proposed Settlement. The Parties were separately represented by able and experienced counsel in complex actions and consumer litigation, and "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42. The Parties' negotiations were protracted, continuing over a five-month period during which they engaged in confirmatory due diligence with respect to the claims at issue, the scope and membership of the Settlement Class, and the terms of the proposed Settlement. Thus, the Parties were not "groping in the darkness" during their negotiations, *Cotton*, 559 F.2d at 1332, and the Settlement was certainly not "the product of uneducated guesswork." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *accord Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). On top of that, the Parties' negotiations occurred within the context of mediation conducted by Terrence M. White of Upchurch Watson White & Max. (Warwick Decl. at ¶ 15; *see also* Docs. 66-1, 72-1; 76). The participation of such a respected neutral in the settlement negotiation process should give the Court "confidence that [the negotiations] were conducted in an arm's-length, non-collusive

---

[7] *Accord Mees v. Skreened, Ltd.*, No. 14-cv-142, 2016 WL 67521, at *2 (S.D. Ohio Jan. 6, 2016) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion."); *Archbold v. Wells Fargo Bank, N.A.*, No. 13-cv-24599, 2015 WL 4276295, at *2 (S.D. W. Va. July 14, 2015) (same); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("[T]he courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement:").

manner."  *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004).[8]

In addition, there is no evidence suggesting that Plaintiff Grant or Class Counsel are unfairly benefiting at the expense of the Settlement Class.  The proposed compensation to Class Counsel of up to $150,000 in Attorneys' Fees and Expenses, is sufficiently reasonable at this stage to warrant preliminary approval, in light of the $500,000 value of the Settlement Fund being offered to the Settlement Class.  (Warwick Decl. at ¶ 16).[9]  Moreover, the proposed Settlement does not grant preferential treatment to Plaintiff Grant—instead, her putative recovery is limited to that obtainable by other Settlement Class Members, along with up to $3,500 as a Service Award

---

[8] *See also Faught v. Am. Home Shield Corp.*, No. 07-cv-1928, 2010 WL 10959223, at *21 (N.D. Ala. Apr. 27, 2010) (fact that "negotiations were supervised by a highly experienced mediator" evidenced arms-length nature of class settlement), *aff'd.*, 688 F.3d 1233 (11th Cir. 2011); *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (use of mediator during settlement negotiations "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"); *In re CIGNA Corp. Sec. Litig.*, No. 02-cv-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (settlement entitled to presumption of fairness where parties' negotiations "were assisted by a retired federal district judge who was privately retained and served as a mediator."); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court appointed special master to oversee mediation efforts evidenced the procedural fairness of the negotiating process); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion…. Parties colluding in a settlement would hardly need the services of a neutral third party to broker their deal.").

[9] The potential maximum Attorneys' Fees and Expenses award of $150,000 represents 22.95% of the total relief being offered by Ocwen under the Settlement [*i.e.*, $150,000 ÷ ($500,000 Settlement Fund + $150,000 in Attorneys' Fees and Expenses + $3,500 Service Award], and 30.0% when compared only to the Settlement Fund itself ($150,000 ÷ $500,000).  Such rates of recovery are well within the range of reasonableness. *See, e.g, Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33 1/3% of settlement value); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) (approving 33% award, and noting "[t]he requested fee is entirely consistent with fee awards in comparable cases nationwide, within the Eleventh Circuit, and within the Southern and Middle Districts of Florida."); *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) (approving 31 1/3% fee award); *Black v. Winn-Dixie Stores, Inc.*, No. 09-cv-502, 2011 WL 13257526, at *5 (M.D. Fla. June 17, 2011) (approving 30% fee award payable from common fund); *In re Friedman's, Inc. Sec. Litig*, No. 03-cv-3475, 2009 WL 1456698, at *2 (N.D. Ga. May 22, 2009) (approving 30% fee award); *Eslava v. Gulf Tel. Co., Inc*., No. 04-cv-297, 2007 WL 4105977, at *2 (S.D. Ala. Nov. 16, 2007) (same). *Accord Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991) (noting that fee awards are generally subject to "an upper limit of 50% of the [settlement] fund.").

to compensate her for her time, effort, and inconvenience in connection with acting as the class representative in this case. *Camp v. City of Pelham*, No. 10-cv-01270, 2014 WL 1764919, at *6 (N.D. Ala. May 1, 2014) ("[t]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action"); *Warren v. Cook Sales, Inc*., No. 15-cv-0603, 2017 WL 325829, at *8 (S.D. Ala. Jan. 23, 2017) (service award of $5,000 "fair and reasonable"). *Cf.* 2 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 6:28 at 197 (10th ed. 2013) ("[T]here is near-universal recognition that it is appropriate for the court to approve an incentive award payable from the class recovery, usually within the range of $1,000-$20,000."). There is nothing collusive about Plaintiff Grant's and Class Counsel's reservation of the right to seek such awards, particularly where any such awards will be paid separately from and in addition to the Settlement Fund. Accordingly, there is no evidence or settlement term that suggests the Settlement is tainted by fraud or collusion.

### D.      The Settlement is Substantively Fair

In evaluating whether to grant preliminary approval, the Court need only determine whether the terms of the Settlement fall within the range of possible final approval. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 at 320-21; *accord Lazy Oil Co.*, 95 F. Supp. 2d at 338 (in considering a class settlement, the inquiry properly is "whether the recovery falls within th[e] range of reasonableness, not whether it is the most favorable possible result of litigation.").

Here, the Settlement offers relief that is not only reasonable, but equates to what most likely would be the best possible recovery for the Settlement Class. Under the FDCPA, a prevailing class of persons may recover any actual damages sustained, and statutory damages "not to exceed . . . $500,000," and their reasonable attorneys' fees. 15 U.S.C. § 1692k. Actual damages under the FDCPA would be unusual and highly individualized in this context, because the mere receipt

21

of an account statement without some individual reliance or other individualized impact is not actual damage.  Accordingly, actual damage claims under the FDCPA in this context would likely not be amenable to class treatment.  *Cf. Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 536 & n.2 (11th Cir. 2017) (vacating denial of class certification in FDCPA action seeking only statutory damages, where likelihood of any actual damages from the alleged violation was remote, and any class members who believed they had suffered actual damages could opt out and pursue such claims through individualized litigation).

In terms of the FDCPA's statutory damage remedy, the proposed Settlement offers the Settlement Class with a $500,000 Settlement Fund, which equals the maximum amount of statutory damages available to a prevailing class under the FDCPA, *despite the fact that at least three federal courts have determined that Ocwen's conduct at issue here does not violate the FDPCA*.  The Settlement also provides for a reasonable Attorneys' Fees and Expenses award, to be paid separately and in addition to the Settlement Fund, again tracking what is the best result available to a prevailing class under the FDCPA.  And unlike most FDCPA class settlements approved by federal courts, *this* Settlement does not require Settlement Class Members to submit claim forms to obtain a share of that relief.  Instead, *all* Settlement Class Members who do not opt-out will be automatically entitled to a share of the Settlement Fund.  Such relief is reasonable because, even if the Settlement Class were to abandon the Settlement, proceed to trial and prevail on liability, the Court could award no statutory damages at all, or award a lesser amount of statutory damages.  Under no scenario, however, could the Court award more than $500,000 in statutory damages to the proposed Class under the FDCPA.

The fact that Settlement Class Members who elect to remain in the Settlement Class will receive only approximately $3.63 from the Settlement Fund is of no moment.  Such relief is

reasonable both globally and on an individual basis because "the purpose of statutory damages is not to afford compensation but 'to deter wrongful conduct.'" *Messineo v. Ocwen Loan Serv., LLC*, No. 15-cv-2076, 2017 WL 733219, at *5 (N.D. Cal. Feb. 24, 2017) (quoting *Cannon v. Cherry Hill Toyota, Inc.*, 161 F. Supp. 2d 362, 373 (D.N.J. 2001); *accord Sanders* v. Jackson, 209 F.3d 998, 1003 (7th Cir. 2000) (FDCPA statutory damages are not meant to provide "monetary gain for the class members," and absent evidence of actual injury "[p]laintiffs in FDCPA class actions . . . cannot reasonably expect large awards for what are technical and *de minimis* violations of the Act."); *Thomas v. Pierce, Hamilton, and Stern, Inc.*, 967 F. Supp. 507, 509 (N.D. Ga. 1997) (explaining that "[b]y making the debt collector's conduct the bellwether for imposition of a statutory damage award, Congress obviously intended the statutory award to 'punish and deter' wrongdoers and prevent abusive conduct in the future").  Congress has chosen to cap the amount of deterrence to be imposed on behalf of a prevailing FDCPA class at $500,000.  The appropriate focus, then, is on how the value of the Settlement Fund compares to the available FDCPA statutory award—and here, the two are equal.  Because of the purposes of statutory damages and Congress' decision to impose the FDCPA statutory damage cap, the prospect of *de minimis* recovery by individual class members from a classwide statutory damage remedy is no obstacle to class

certification[10] or settlement.[11]

The Settlement is also well within the range of reasonableness to warrant preliminary approval, even though no provision is made for the recovery of actual damages by Settlement Class Members.  Any claim of mental anguish is clearly not susceptible of class-wide proof,[12] and any payment by Settlement Class Members in response to a Monthly Statement or Delinquency Notice is not only highly individualized, it is unlikely to constitute injury at all.  This is because while a Chapter 7 discharge eliminates a Settlement Class Member's *personal liability* to repay his or her home loan, it does not eliminate that Settlement Class Member's mortgage lien associated with that loan.  Broome Decl. at ¶ 12; *see also In re Scantling*, 465 B.R. 671, 679 (Bankr. M.D. Fla. 2012) ("A chapter 7 discharge, by itself, does not extinguish any liens securing the debt.  Any lien

---

[10] *See, e.g.*, *Prindle v. Carrington Mtg. Servs., LLC*, No. 13-cv-1349, 2016 WL 4466838, at *9 (M.D. Fla. Aug. 24, 2016) (certifying FDCPA class even though "individual recoveries [might] be limited to $5 per class member" due to the FDCPA's statutory damage cap); *Rigney v. Livingston Fin., LLC*, 12-cv-617, 2014 WL 12625790, at *6 (M.D. Fla. Mar. 6, 2014) (same, even though use of the class device would mean that "each proposed Class member w[ould] recover less than $7.00" due to FDCPA statutory damage cap); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 271 F.R.D. 572, 574-77 (N.D. Ohio 2010) (same, even though class members stood to receive only $3.10 each due to FDCPA's class action statutory damages cap); *Hicks v. Client Servs, Inc.*, 257 F.R.D. 699, 700 (S.D. Fla. 2009) (refusing to decertify FDCPA class, even though "the maximum recovery per class member would be $1.24"); *Hernandez v. Midland Credit Mgmnt, Inc.*, 236 F.R.D. 406, 414-15 (N.D. Ill. 2006) (certifying FDCPA class, even though class members would potentially receive no more than $8.93 each).

[11] *Carr v. Ocwen Loan Serv., LLC*, No. 13-cv-732, slip op. at 5, 18 (N.D. Ga. Apr. 25, 2014) (No. 101) (approving FDCPA class settlement offering relief of approximately $1.88 per class member, and noting "that the maximization of pro rata shares of classwide statutory damages is simply not the benchmark for assessing an FDCPA settlement's fairness, reasonableness or adequacy.").  *See also Beneli v. BCA Fin. Servs., Inc.*, No. 16-cv-2737, 2018 WL 734673, at *13-14 (D.N.J. Feb. 6, 2018) (approving FDCPA class settlement, and finding statutory awards of $3.82 per class member to be reasonable and appropriate); *Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 150, 159 (E.D. Pa. 2016) (finding FDCPA class action settlement offering class members approximately $13.25 each to be reasonable and adequate); *Dalton v. Cardworks Serv., LLC*, 09-cv-563, 2010 WL 5341939, at *7 (S.D. Ala. Nov. 19, 2010) (approving FDCPA class settlement awarding up to $10 to each class member); *Cope v. Duggins*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA class settlement awarding $11.90 to class members who submitted a claim form).

[12] *See, e.g.*, *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (noting that mental anguish claims are generally inappropriate for class action treatment because they present "inherently individualized injuries" and "compel[] an inquiry into each class member's individual circumstances").

rights survive bankruptcy and are unaffected by the discharge."), *aff'd*, 754 F.3d 1323 (11th Cir. 2014).  If that mortgage lien is not kept current, a mortgage servicer like Ocwen is fully entitled to exercise its *in rem* rights to foreclose on the property and divest the Settlement Class Member of both possession and title to the home.  *See, e.g.*, *Jordan v. CitiMortgage, Inc.*, No. 11-cv-565, 2014 WL 695211, at *6 & n.5 (N.D. Ga. Feb. 24, 2014) (rejecting suggestion that borrower could assert wrongful foreclosure claim given that facts disclosed "Plaintiff defaulted on his loan obligations, that only Plaintiff's personal liability was discharged in bankruptcy, . . . and that the Loan remains unpaid.").  Accordingly, the Bankruptcy Code provides a "safe harbor" for loan servicers to attempt the collection of periodic payments associated with a valid security interest from discharged borrowers.  *Waterhouse v. Wells Fargo Home Mortg.*, 14-cv-2794, 2015 WL 3867005, at *3 (M.D. Fla. June 23, 2015).  Against that backdrop, any Settlement Class Member who retained possession of his or her home following discharge and who made a payment after receiving a Monthly Statement or Delinquency Notice in order to avoid or delay foreclosure *cannot have suffered any cognizable actual injury*—such payments were consideration for and fully offset by his or her continued possession and use of the home in lieu of the exercise of Ocwen's foreclosure rights.  Nevertheless, if any such persons believe their payments amount to an "actual injury" within the meaning of the FDCPA despite all this, the Settlement offers them the right to exclude themselves from the Settlement Class and bring their own action for statutory damages, actual damages, and attorneys' fees against Ocwen.[13]  *See, e.g.*, *Dickens*, 706 F. App'x at 536 &

---

[13] Ocwen's policies and procedures provide for the suppression of the generation of Monthly Statements and Delinquency Notices to borrowers Ocwen's records reflect have been discharged in Chapter 7 bankruptcy and who have relinquished possession and title to their homes through the bankruptcy process. Broome Decl. at ¶ 11.  To the extent any Monthly Statements or Delinquency Notices were sent to such a borrower despite these polies and practices, it would be due to human and/or timing errors in recognizing that suppression flags needed to be raised with respect to that loan.  A "bona fide error" is a defense generally to an FDCPA claim, 15 U.S.C. § 1692k(c), and a defense specifically in such circumstances.  *See Arnold v. Bayview Loan Serv., LLC*, 659 F. App'x 568 (11th Cir. 2016) (affirming entry of judgment in

n.2 (named plaintiff's adequacy in FDCPA class action is not affected by her decision to not "to seek every remedy that *possibly*—as opposed to probably—would be sought by absent class members," and "Rule 23's opt-out provision should have allayed [the district court's] concerns about any class member who may have suffered actual damages").

In addition, the immediate relief offered by the Settlement to the members of the Settlement Class is certainly reasonable in light of the risks of continued litigation.  Ocwen could very well have prevailed on the merits here (either at the trial level or on appeal), given that Ocwen successfully defeated similar claims in similar federal cases filed in Virginia, Connecticut and New Hampshire.  Such a real risk for years of further litigation, coupled with the possibility that Ocwen could ultimately prevail on the merits, strongly suggests that certification of a litigation class could be denied and/or the class members left with no recovery at all—a factor that counsels in favor of the Settlement's preliminary approval.  *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (noting that in the class action settlement context, it is "proper to take the bird in hand instead of a prospective flock in the bush"); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007) (noting that settlement was approved where "the risk of going forward was substantial" despite the court's belief that case had merit). Accordingly, the Settlement is sufficiently within the range of possible final approval to justify its preliminary approval, and dissemination of notice to the Settlement Class Members.

## V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS

The threshold inquiry concerning the sufficiency of class notice is whether the notice is

---

favor of loan servicer who inadvertently, due to a bona fide error, sent two monthly account statements to a discharged debtor who had been divested of title and possession to his property through the foreclosure process).

reasonably calculated to apprise the class of the pendency of the action, of the terms of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  Notice of a class settlement ensures that the due process rights of class members are protected.  *See, e.g.*, *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176-77 (5th Cir. 1975). Accordingly, a court should ensure that "the best notice that is practicable under the circumstances" is disseminated "in a reasonable manner to all class members who would be bound by the proposal," including through "individual notice to all [class] members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2)(B), (e)(1).

The Court is vested with considerable discretion in fashioning notice—both in terms of the notice's content and manner of distribution.  7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1797.6, at 200 (3d ed. 2005).  This is particularly true within the context of a class action settlement.  *See, e.g.*, *Handsche v. Special Serv. Div.*, 787 F.2d 828, 833 (2d Cir. 1986); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 913 (E.D. La. 2012), *aff'd.*, 739 F.3d 790 (5th Cir. 2014).  Such discretion is limited only by the requirement that the contents of the notice "inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the [settlement fairness] hearing."  2 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (FOURTH) § 8.32 (2002).  After all, Rule 23(e) notice is designed to be only a summary of, and not a complete recitation regarding, the litigation and proposed settlement.  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975) ("Class Members are not expected to rely upon the notices as a complete source of settlement information.").  As

such, the notice need not be unduly specific, or reference every term of the proposed settlement. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) ("The standard for the adequacy of a settlement notice . . . is measured by reasonableness," and "the notice need not include 'every material fact' or be 'overly detailed,'"); *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."). This is in keeping with the principle that Rule 23(e) notice is bound only by Constitutional Due Process principles, such that the notice need only be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the [settlement proposed] and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (citation omitted).

### A.   <u>The Content of the Proposed Notice is Appropriate</u>

As a general rule, Rule 23 notice should: (1) define the class, and disclose whether certification is limited or conditional in nature; (2) describe the litigation, including the allegations of the complaint; (3) summarize the essential terms of the proposed settlement; (4) describe the options available to each class member under the proposed settlement, along with any deadlines; (5) disclose any requested allowances for attorneys' fees and special benefits to the class representatives; (6) disclose the time and place of the fairness hearing and describe its purpose; (7) describe the procedures for filing appearances and objections; (8) disclose how class members can contact class counsel; and (9) explain how class members may inspect and obtain documents relating to the settlement and the entire litigation. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 at 295-96; 2 NEWBERG ON CLASS ACTIONS (FOURTH) § 8:32. "It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put

28

class members on notice of the general parameters of the settlement and to inform them of where information as to the specifics may be obtained." *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd.*, 737 F.2d 982 (11th Cir. 1984); *accord Faught*, 668 F.3d at 1239-40.

Here, the class notice proposed by the Parties satisfies all of the requirements and guidelines associated with Rule 23.  The notice:

- Defines the Settlement Class and discloses that it has been certified for purposes of settlement only;

- Discloses each Settlement Class Member's right to opt-out of the Settlement and the method and deadlines for doing so;

- Describes the litigation and the key allegations of the Operative Complaint;

- Summarizes the key terms of the Settlement, and discloses that the notice is merely a summary of the Settlement's actual and complete terms;

- Provides information to Settlement Class Members on how they may obtain additional information, contact Class Counsel, and inspect at the Clerk of the Court's office additional documents relating to the Settlement and the Action generally;

- Describes the relief to be offered to Settlement Class Members under the Settlement, their options under the Settlement, and the procedures for filing appearances and objections;

- Identifies and explains the scope of the proposed Release and Released Claims;

- Discloses that a Service Award to Plaintiff Grant, and Attorneys' Fees and Expenses to Class Counsel, will be sought (and the maximum amounts that will be sought), but that such awards must be approved by the Court; and

- Provides the time and location of the Fairness Hearing, along with a description of that hearing's purpose.

(Settlement at Ex. A).  The Settlement also calls for the notice to be distributed to the Settlement Class Members beginning "no later than twenty-one (21) days after entry of the Preliminary Approval Order."  (*Id.* at ¶ 5.2.2).  The Settlement establishes, and the notice discloses, that the deadline for Settlement Class Members to exclude themselves from or object to the Settlement will be thirty-five (35) days before the Fairness Hearing (*Id.* at ¶ 2.1.18), thereby giving Settlement

Class Members more than ninety (> 90) days to request exclusion or object to the Settlement.  Such a period of time is wholly sufficient to give Settlement Class Members the opportunity to react and comment to the Settlement.  *Greco v. Ginn Devel. Co., LLC*, 635 F. App'x 628, 634 (11th Cir. 2015) (collecting cases, and concluding 45 day response period adequate); *accord Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1352 (M.D. Fla. 2016) (approving notice plan affording class members 60 day response period); *Lusby v. GameStop, Inc*., No. 12-cv-03783, 2015 WL 1501095, at *7 (N.D. Cal. Mar. 31, 2015) (same).

At bottom, the proposed notice provides Settlement Class Members with sufficient information and time to make an informed and intelligent decision about joining or opting out of the Settlement.  The proposed notice satisfies the requirements of Rule 23 and Due Process. Accordingly, the Court should approve the form and content of the notice proposed by the Settlement.

**B.      The Plan for Disseminating the Notice is Also Appropriate**

The Court should also approve the Parties' plan for disseminating the notice to the members of the Settlement Class.  "The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required."  *Adams v. S. Farm Bureau Life Ins. Co*., 417 F. Supp. 2d 1373, 1380, n.6 (M.D. Ga. 2006), *aff'd*., 493 F.3d 1276 (11th Cir. 2007); *see also Juris v. Inamed Corp*., 685 F.3d 1294, 1321 (11th Cir. 2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.").

Here, the Parties were able to identify all of the Class Loans from Ocwen's records—in other words, all loans that were sent a Monthly Statement and/or a Deliquency Notice by Ocwen between November 17, 2014 and April 19, 2018, even though Ocwen's records reflect that at least

one borrower on each of those loans had previously received a Chapter 7 discharge in bankruptcy of personal liability with respect to that loan.  (Broome Decl. at ¶¶ 4-6).  The Parties also identified the property addresses, borrower and co-borrower names, and borrower mailing addresses associated with all of those Class Loans.  (*Id.*).  The Parties have agreed to provide notice by U.S. First-Class Mail to each of those persons as the borrower mailing addresses for the Class Loans, as identified from Ocwen's records and as supplemented by the Settlement Administrator through the National Change of Address system and skip-tracing for all Class Loans that were no longer being serviced by Ocwen as of April 19, 2018 (*i.e.*, the Class Roster Date).  Distribution of notice by U.S. First-Class Mail is presumptively adequate[14] and, because the class period only dates back to November 17, 2014, Ocwen's address records provide a reasonable basis upon which to direct notice to the Settlement Class (as supplemented by skip-tracing for Class Loans no longer being serviced by Ocwen as of the Class Roster Date, and by similar reasonable means in re-mailing undeliverable class notices).  *Messineo v. Ocwen Loan Serv., LLC*, No. 15-cv-2076, 2017 WL 733219, at *4 (N.D. Cal. Feb. 24, 2017) (approving use of similar notice program).  The Settlement also calls for the Settlement Administrator to create an internet website dedicated to the Settlement, and to post and make available on it various documents and information related to the Settlement. (Settlement at ¶ 5.3).

Accordingly, the Court should approve not only the form and content of the proposed notice, but also the means proposed by the Parties for distributing that notice to the members of

---

[14] *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("We think that the procedure followed by Kansas, where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process."); *Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 176 (2d Cir. 2006) (distribution of class notice by first class mail is presumptively adequate); *Ciani v. Talk of the Town Restaurants, Inc.*, No. 14-cv-2197, 2015 WL 226013, at *6 (M.D. Fla. Jan. 16, 2015) ("The Court determines that it is appropriate to furnish Class Notice via first class mail.").  *Accord* 7B FEDERAL PRACTICE & PROCEDURE § 1797.6 ("notice by mail to all of the identified class members … will suffice.").

the Settlement Class.

## CONCLUSION

Based on all of the foregoing, Ocwen respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice to the Settlement Class; (3) appoint Class-Settlement.com as the Settlement Administrator; (4) set a schedule for disseminating notice to the Settlement Class Members; and (5) schedule a hearing pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the proposed Settlement is fair, reasonable and adequate and should be given final approval.

This 7th day of May, 2018.                              Respectfully submitted,

*/s/ Robert J. Campbell*
Timothy A. Andreu
Florida Bar No. 443778
tandreu@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
100 N. Tampa Street, Suite 2200
Tampa, Florida  33602
Phone: (813) 559-5500
Fax:  (813) 229-5946

Michael R. Pennington (pro hac vice)
mpennington@bradley.com
Robert J. Campbell (pro hac vice)
rjcampbell@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35173
Phone: (205) 521-8000
Fax: (205) 521-8800

*Attorneys for Defendant,*
*Ocwen Loan Servicing, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of May, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will send a notice of electronic filing to all counsel of record.

<u>*/s/ Robert J. Campbell*            </u>
Robert J. Campbell (pro hac vice)