**DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GLENDA GRANT, f/k/a GLENDA
RANDOLPH, individually and on behalf of a
class of persons similarly situated,

               Plaintiff,                       CASE NO.: 3:15-cv-01376-MMH-PDB

vs.

OCWEN LOAN SERVICING, LLC,

               Defendant.

_____/

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

**VARNELL & WARWICK, P.A.**
BRIAN W. WARWICK, Florida Bar No.: 0605573
JANET R. VARNELL, Florida Bar No.: 0071072
DAVID K. LIETZ (ADMITTED PRO HAC VICE)
P.O. Box 1870
Lady Lake, FL 32158
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@varnellandwarwick.com*
*bwarwick@varnellandwarwick.com*
*dlietz@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

***Attorneys for Plaintiff***

## <u>TABLE OF CONTENTS</u>

I.   THE COURT SHOULD PRELIMINARILY CERTIFY THE
     PROPOSED CLASS..................................................................................2

     A.  STANDARD FOR CLASS CERTIFICATION. ..................................3
     B.  THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR
         CERTIFICATION. ...............................................................................3

         1.  RULE 23(a)(1)–NUMEROSITY..............................................4
         2.  RULE 23(a)(2)–COMMONALITY...........................................6
         3.  RULE 23(a)(3)–TYPICALITY. ...............................................8
         4.  RULE 23(a)(4)–ADEQUACY OF REPRESENTATION............8
         5.  RULE 23(b)(3)–COMMON QUESTIONS OF LAW OR FACT
             PREDOMINATE....................................................................10
         6.  RULE 23(b)(3)–CLASS ACTION IS SUPERIOR TO OTHER
             AVAILABLE METHODS TO RESOLVE THIS CONTROVERSY...........11

II.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF
     THIS CLASS ACTION SETTLEMENT. ................................................13

     **A.** TERMS OF THE PROPOSED SETTLEMENT. ...............................13
         1.  Settlement Fund .....................................................................13
         2.  Size of the Settlement Class...................................................13
         3.  Individual Allocations............................................................13
         4.  Timing of Distributions..........................................................14
         5.  Method of Distributions.........................................................14
         6.  Settlement Administration Costs............................................14
         7.  Class Representative Service Award .......................................14
         8.  Attorneys' Fees and Costs ......................................................14

     B.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL......................15

     C.   THIS SETTLEMENT FALLS WITHIN THE "RANGE OF
          REASONABLENESS" AS TO ITS FAIRNESS, ADEQUACY AND
          REASONABLENESS .......................................................................16

     D.   SERVICE AWARD AND PLAINTIFFS' ATTORNEY FEES AND
          EXPENSES.......................................................................................19

     E.   THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS ...................21
     F.   PROPOSED ORDER ........................................................................23

CONCLUSION............................................................................................23

Plaintiff, GLENDA GRANT, individually and on behalf of all others similarly situated, ("Grant" or "Plaintiff"), by and through her undersigned counsel, files this Memorandum of Law in Support of the Joint Motion for Certification of Settlement Class and Preliminary Approval of the proposed Class Action Settlement.  In support of the motion, Plaintiff states as follows:

This is a class action seeking class wide relief for violation of the FDCPA to recover statutory damages on behalf of all those similarly situated pursuant to 15 U.S.C.A. § 1692k(a)(2)(B) and attorney's fees and the costs of this action under 15 U.S.C.A. § 1692k(a)(3). Plaintiff alleges that "in an effort to seek monetary recoveries on discharged debts," Ocwen "intentionally and systematically sends . . . borrowers correspondence demanding payment of amounts discharged in bankruptcy, including but not limited to [delinquency notices and] periodic account statements containing payment demands and detachable payment coupons" (Doc. 1 at ¶ 23). Such correspondence, Plaintiff Grant alleges, misrepresents the character and legal status of the debt to a borrower who had previously received a Chapter 7 discharge in bankruptcy of personal liability on his or her home mortgage loan by suggesting that the borrower remained personally obligated to continue making payments on the loan (Id. at ¶ 46). Based on those allegations, Plaintiff Grant asserted causes of action against Ocwen under the FDCPA and the Florida Consumer Collection Practices Act (Id. at ¶¶ 31-108).

After engaging in considerable discovery and participating in two separate arms-length, informed mediation sessions (with both sides being represented by competent and experienced class action counsel), the parties reached an agreement in principle on the terms of this Settlement, and now bring this proposed Class Action Settlement before this Honorable Court for preliminary approval.  Under the terms of the proposed Settlement, the Settlement Class is defined as:

1

> All borrowers on home mortgage loans who were sent a Monthly Statement and/or Delinquency Notice by Ocwen Loan Servicing, LLC between November 17, 2014 and April 19, 2018 while their loan was flagged in Ocwen's loan servicing system as having received a Chapter 7 bankruptcy discharge.

Excluded from the Settlement Class are: (i) Ocwen's board members and executive level officers; (ii) persons who timely and properly exclude themselves from the Settlement Class as provided in this Agreement; and (iii) the federal district and magistrate judges assigned to this Action, along with their spouses and persons within the third degree of relationship to them.

This proposed Settlement focuses on the FDCPA claim, the Plaintiff having dropped the FCCPA claim via her First Amended Complaint, filed with the written consent of Defendant pursuant to Rule 15(a)(2) on May 4, 2018 (DE 81).  The First Amended Complaint also expanded the scope of the putative Settlement Class to a nation-wide class.

## I.   THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED CLASS.

In *Crawford v. LVNV Funding, LLC,* 758 F.3d 1254 (2014), the Eleventh Circuit recognized the problem of debt collectors abusing vulnerable consumers who are desperately trying to get a fresh start after bankruptcy.  There, the debtor filed Chapter 13 Bankruptcy and LVNV Funding, filed a proof of claim on a stale debt.  The Court took action to protect consumers from what it described as a "deluge" of improper debt collection activity that was sweeping through the courts and found that the "FDCPA's broad language, our precedent, and the record compel the conclusion that defendants' conduct violated a number of the Act's protective provisions. *See id.* §§ 1692(e), 1692d-1692f."  Plaintiff asks that this Court do the same and certify a Settlement Class pursuant Federal Rule of Civil Procedure 23, for the reasons set forth below.  Here, this Court need not decide whether to do the same on a contested basis, because Ocwen has voluntarily offered in settlement an amount equal to the maximum statutory

damages a class is allowed to obtain under the FDCPA.  Plaintiff therefore asks this Court to certify a Settlement Class pursuant to Federal Rule of Civil Procedure 23, for the reasons set forth below.

### A.  STANDARD FOR CLASS CERTIFICATION.

In order for a class to be certified, even for settlement purposes, the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied along with one of the three categories of Rule 23(b). *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). The trial court has "broad discretion" in deciding whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1669 (11th Cir. 1992). When ruling on a motion for class certification "the court is generally bound to take the substantive allegations of the complaint as true." *Brinker v. Chi. Title Ins. Co.*, 2012 WL 1081211 (M.D. Fla. Feb. 9, 2012). "Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions." *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975). Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. § 1692k(a) and (b) for FDCPA class action cases.

### B.  THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION.

"Letter class actions" of this nature for violations of the FDCPA are eminently certifiable. *See, e.g., Prindle v. Carrington Mortgage Services, LLC*, 2016 WL 4466838, at *11 (M.D. Fla. 2016) ("The [class certification] Motion is due to be granted to the extent Prindle seeks certification of a class based on receipt of the June 2013 Statement."); *Baez v. LTD Financial Services, L.P.*, 2016 WL 3189133, at *5 (M.D. Fla. 2016)("All members experienced the same factual circumstances which caused this lawsuit: they all received the same dunning letter from LTD seeking partial payment on a time-barred debt without disclosing the legal consequences of

such a partial payment."*); Agan v. Katzman & Korr, P .A.,* 222 F.R.D. 692 (S.D. Fla.2004); *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697 (M.D. Fla.2000); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 666-69 (M.D. Fla.1999); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008).   Letter cases are readily certifiable because a Court can view the content of the common communications and the timing of those communications and determine for all class members whether they violate the FDCPA, a strict liability statute.  Moreover, the "least sophisticated consumer" standard to be applied to FDCPA claims, means that there are no individual interpretations or reliance issues to contend with. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-75 (11th Cir. 1985).

## 1.  RULE 23(a)(1)–NUMEROSITY.

Rule 23(a)(1) requires that the class be "so numerous that joinder of the members is impracticable"; however, impracticable does not mean impossible. *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). "The Court is given discretion to make assumptions when determining the numerosity of a class." *Agan*, F.R.D. at 696. The court may "make common sense assumptions in order to find support for numerosity." *Drossin v. Nat'l Action Fin. Servs.*, 255 F.R.D. 608, 615 (S.D. Fla. 2009) (internal citations omitted). "[A] class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982).

Defendant Ocwen's authorized corporate representative, James Thomas Broome, Jr., attested in his Declaration that the putative Settlement Class consists of 137,636 Class Loans, encompassing 196,200 borrowers. *See* Declaration of James Thomas Broome, Jr., in Support of the Preliminary Approval of Stipulation of Settlement and Release. (DE 82).  Since this proposed Settlement contemplates allocations on a per loan basis, the size of the putative class is 137,636

4

Class Loans.

"When the class is large, numbers alone are dispositive…" *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). Where the class numbers 25 or more, joinder is usually impracticable. *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate…" *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal citations omitted). Courts have certified classes with significantly less class members than Defendant Ocwen has admitted exists here. *See e.g. Afro American Patrolmens League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (35 class members); *Riordan*, 113 F.R.D. at 62 (29 class members); *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 625 (N.D. Ill. 2007) (26 class members).

"The focus of the numerosity inquiry is not whether the number of proposed class members are 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (internal citations omitted). "While the size of the proposed class is highly relevant to the court's determination of numerosity, courts must also consider factors such as 'the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits.'" *Id*. Moreover, "where the question on numerosity is a close one, a balance should be struck in favor of a finding of numerosity, as the court always has the option to decertify pursuant to Rule 23(c)(1)." *Leszczynski v. Allianz, Ins.*, 176 F.R.D. 659, 670 (S.D. Fla. 1997).

Here, Defendant Ocwen has admitted that there are 137,636 class members across the

county. This number—combined with the nature of the action, the impracticability of joinder of geographically dispersed class members, and the potential waste of judicial resources and inconvenience should Class Members try individual lawsuits—easily and indisputably satisfies the numerosity requirement under Rule 23(a)(1) for certifying this matter as a class action.

### 2.   RULE 23(a)(2)–COMMONALITY.

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there be a common question of law or fact. Not all factual or legal questions raised in the litigation need to be common so long as at least one issue is common to all class members. *Armstead*, 629 F. Supp. at 280; *Pottingar v. Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984). Commonality of claims "requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009) (internal citations omitted).

Courts have held that a "common nucleus of operative facts" is typically sufficient to meet the commonality requirement Rule 23(a)(2). *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "Common nuclei of fact are typically manifest where … the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Id*. "Where the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004). "[I]t is not just the presence of common questions that matters, but the ability of the class action

device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 685 (S.D. Fla. 2013), quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

In the instant case each putative class member was sent the same form Mortgage Statement or Delinquency Notice seeking to collect a debt previously discharged in bankruptcy, which Plaintiff alleges violates the FDCPA. "To establish commonality, it is sufficient that Plaintiffs allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999). FDCPA claims based on standard language or standard practices are well suited for class certification. *See id.*; *Drossin*, 255 F.R.D. at 608.

The primary legal question in this case is whether Defendant's form Mortgage Statements and Delinquency Notices seeking to collect debts discharged in bankruptcy violates the FDCPA. "This overriding common question, which is subject to common resolution, is enough to establish commonality." *See Manno*, 289 F.R.D. at 685 (holding that the question of whether defendant violated the FDCPA by leaving voice message for putative class members and failing to disclose message was from a debt collector was sufficient to establish commonality). The only individual issue remaining in this case is the identification of the class members. The identification of the class members may be accomplished by a review of Defendant's records—a review already accomplished by Defendant Ocwen in determining the number of members of the putative class. [DE 82].

Because each of the putative class members' claim depends on the same legal question— whether Defendant Ocwen's form Mortgage Statements and Delinquency Notices seeking to collect debts discharged in bankruptcy violates the FDCPA—Plaintiff has satisfied the commonality requirement of Rule 23(a)(2).

### 3.   RULE 23(a)(3)–TYPICALITY.

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the named plaintiff be typical of the claims of the class. A claim is typical if it arises from the same practice that gives rise to the claims of other class members and the claims are based on the same legal theory. *Kornberg*, 741 F.2d at 1337.

In the instant case, typicality is inherent in the class definition, as each of the putative class members were sent the same form Mortgage Statement to collect a debt that had been previously discharged in bankruptcy, in alleged violation of the FDCPA. *See Fuller*, 197 F.R.D. at 700 (finding typicality where the putative class members were each sent one of two variations of a debt collection letter plaintiff alleged violated the FDCPA).

Plaintiff and the putative class members were all sent the same form Mortgage Statement or Delinquency Notice seeking to collect on discharged debts.  There is no variation in the substance of the form Mortgage Statement or Delinquency Notice, other than each class members' personal information and debt information.  Accordingly, the typicality requirement has been met because each putative class member will be traveling under the same legal theory and each class members' claim will involve the same legal question—whether Defendant's form Mortgage Statement or Delinquency Notice seeking to collect a debt discharged in bankruptcy violated the FDCPA.

### 4.   RULE 23(a)(4)–ADEQUACY OF REPRESENTATION.

Rule 23 of the Federal Rules of Civil Procedure also requires that a named plaintiff provide fair and adequate protection of the interests of the class. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the

representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1323 (11th Cir. 2008) (internal citations omitted).  Generally, a class representative must have a "'working knowledge' of the case"; however, "the threshold of knowledge required to qualify a class representative is low." *In re Checking Account Overdraft Litig*., 281 F.R.D. 667, 675 (S.D. Fla. 2012). "It is well-settled that it is not necessary for named class representatives to be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action." *Powers v. Gov't Employees Ins. Co*., 192 F.R.D. 313, 317–318 (S.D. Fla.1998).

Ms. Grant understands the basic facts and law at issue in this case, and she understands her responsibilities as the class representative in this matter.  See Affidavit of Glenda Grant, attached hereto as Exhibit 1.  She was sent and has reviewed the important papers in this litigation, understood the points and arguments, and has had conversations with her lawyers when she needed things explained to her. *Id.* She has selected counsel who are skilled and experienced in consumer class action litigation. *Id.*

Plaintiff and the putative settlement class is represented by attorneys experienced in handling consumer class actions. See Declaration of Brian W. Warwick, attached hereto as Exhibit 2. Counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action. *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010).

A relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff coincide with the general interests of the class. Here Plaintiff and the putative class members seek statutory damages as the result of Defendant Ocwen's collection practices. Given the identical nature of the claims between the Plaintiff and the class members, there is no

potential for conflicting interests in this action. There is no antagonism between the interests of Plaintiff and those of the class.

Based on the above, the Rule 23(a)(4) adequacy requirement has been satisfied. Glenda Grant should be appointed as the class representative. Pursuant to Rule 23(g), the parties request the Court appoint Janet R. Varnell and Brian W. Warwick as Class Counsel.

### 5.   RULE 23(b)(3)–COMMON QUESTIONS OF LAW OR FACT PREDOMINATE.

In addition to satisfying the four requirements under Rule 23(a), "a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Rule 23(b)(3) requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members." Under Rule 23(b)(3), "[t]he court's inquiry is typically focused on 'whether there are common liability issues which may be resolved efficiently on a class-wide basis.'" *Drossin*, 255 F.R.D. at 613 (internal citations omitted). "Under Rule 23(b)(3), it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby*, 513 F.3d at 1324, quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

Although it is not necessary that all questions of law or fact be common, in this case the questions of law or fact at issue are common to Plaintiff and all members of the putative class. The "common nucleus of operative fact" is that all class members, by definition, were sent the same form Mortgage Statement or Delinquency Notice regarding a debt that was discharged in bankruptcy, which Plaintiff alleges was a communication seeking to collect a debt that violates 15 U.S.C. § 1692e. Cases dealing with the legality of standardized documents and practices are generally appropriate for resolution by class action because the document or practice is the focal

point of the analysis. *Drossin*, 255 F.R.D. 608.

In *Prindle v. Carrington Mortgage, supra*, this Court certified a nearly identical FDCPA debt collection action, as follows:

> As to the second purportedly common question, because the least-sophisticated consumer standard is objective, and Carrington conceded at oral argument on May 9, 2016, that that standard does not take into account the individual circumstances of a plaintiff, see Tr. of May 2016 Hearing at 69–70, the Court must examine only the mortgage statement in determining whether it violated the FDCPA. As such, whether the mortgage statement would be false, deceptive, or misleading from the perspective of the least sophisticated consumer presents a common question because it may be decided "in one stroke" based on the language of the statement itself.

*Prindle,* 2016 WL 4466838 at *9.

Because of the standardized nature of Defendant Ocwen's conduct, questions common to Plaintiff and the putative class members likewise predominate this matter. The only individual issue is the identification of persons to whom Defendants sent the Mortgage Statements or Delinquency Notice in the same form as were sent to Plaintiff.  Ocwen has already identified these persons through a review of its business records. It is clear that both the factual issues and the issues of law are common to the class.  Whether Ocwen's issuance of these documents on discharged debts would be false, deceptive or misleading to the least sophisticated consumer is the predominating common question in this litigation.   As a result, the predominance requirement of Rule 23(b)(3) is also established.

### 6.   RULE 23(b)(3)–CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS TO RESOLVE THIS CONTROVERSY.

The superiority issue is concerned with whether a "class action is superior to other available methods for the fair and efficient adjudication of the [controversy]." *Busby*, 513 F.3d at 1326. Efficiency is the primary focus in determining whether the class action is the superior

11

method for resolving the controversy presented. "[T]he class action procedure allows for the efficient and economical litigation of a question potentially affecting every class member." *Kelly v. Sabretech Inc*., 195 F.R.D. 48, 51 (S.D. Fla. 1999).

The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992). It is proper for a court, in deciding the "best" available method to resolve the controversy, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc*., 503 F.2d 1161, 1165 (7th Cir. 1974).

In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiff. *See Hicks v. Client Servs*., 257 F.R.D. 699, 700 (S.D. Fla. 2009). For an FDCPA claim, the class recovery of statutory damages is the lesser of $500,000.00 or 1% of a defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B).

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual subjected to Defendant Ocwen's practices. Class actions are a more efficient and consistent means of trying the legality of a debt collector's form collection letter. See *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990). Class certification of this FDCPA action will provide an efficient and appropriate resolution of the controversy.

Accordingly, the preponderance and superiority elements of Rule 23(b)(3) have been

met.  Where all of the necessary elements of Rule 23(b) have been established, certification of the settlement class is appropriate, and the Court should so order.

## II.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THIS CLASS ACTION SETTLEMENT.

This proposed Class Action Settlement Agreement meets the standard of fundamental fairness and should be preliminarily approved by this Court.

### A. TERMS OF THE PROPOSED SETTLEMENT.

The proposed Settlement contemplates the following general terms:

1. **Settlement Fund.**  A "Settlement Fund" with an aggregate value of Five Hundred Thousand Dollars ($500,000.00).  Ocwen has agreed to make this Settlement Fund available to the Settlement Class, to be distributed as Individual Allocations to Plaintiff Grant and those Settlement Class Members who do not exclude themselves from the Settlement Class.

   The Settlement Fund is a lump sum and is not designated as any specific category of monetary relief.  The amount of the Settlement Fund ($500,000.00) equals the full aggregate amount of statutory damages Plaintiff Grant and the Settlement Class could recover under section 1692k of the FDCPA through the continued litigation of the Action under the Operative Complaint.

2. **Size of the Settlement Class.**  The Settlement Class consists of 137,636 Class Loans, encompassing 196,200 borrowers. See Declaration of James Thomas Broome, Jr., in Support of the Preliminary Approval of Stipulation of Settlement and Release (DE 82).

3. **Individual Allocations.**   Consistent with the terms of section 1692k of the FDCPA, the Settlement Fund will be divided and distributed equally among Plaintiff Grant and those Settlement Class Members who do not timely submit valid requests for exclusion, based on the number of Class Loans remaining within the Settlement Class following the Objection/Exclusion Deadline (the "Individual Allocations"). As a result, co-borrowers, joint borrowers and multiple borrowers on the same Class Loan are not each entitled to a separate Individual Allocation. Instead, each Class Loan will be entitled to receive only one Individual Allocation from the Settlement Fund. The purpose of this method of allocation is to ensure that the Settlement Fund is allocated equitably based on the number of Class Loans remaining in the Settlement Class following the Objection/Exclusion Deadline and does not disproportionately reward Class Loans on which there are multiple borrowers.

4. **Timing of Distributions.** The Parties shall cause the Settlement Administrator to distribute the Individual Allocations to the Settlement Class no later than sixty (60) days following the Final Settlement Date.

5. **Method of Distributions**. Individual Allocations will be distributed by check, payable in U.S. Funds, and— unless otherwise mutually agreed to by the Parties for good cause shown—shall be made payable jointly to all Settlement Class Members identified as borrowers in Ocwen's records on each Class Loan. Such checks will be mailed by the Settlement Administrator to the mailing address of record for each such Class Loan as reflected in Ocwen's records.

6. **Settlement Administration Costs.** Defendant Ocwen has agreed to pay or cause to be paid—apart from and in addition to the Settlement Fund—the Costs of Administration associated with administering the Settlement and providing notice to the Settlement Class.

7. **Class Representative Service Award.** Plaintiff and her counsel have reserved the right to petition the Court for a Service Award to Plaintiff Grant in an amount to be determined by the Court but not to exceed Three Thousand Five Hundred Dollars ($3,500.00). This amount, if any is awarded by this Court, are in addition to, and not a part of, the $500,000.00 Settlement Fund proposed. The Proposed Settlement is not made contingent upon any particular amount of Service Award or Attorneys' Fees and Expenses being awarded by the Court.

8. **Attorneys' Fees and Costs.** Plaintiff and her counsel have reserved the right to petition the Court for an award of Attorneys' Fees and Expenses in an amount to be determined by the Court, but not to exceed One Hundred and Fifty Thousand Dollars ($150,000.00). This amount, if any is awarded by this Court, are in addition to, and not a part of, the $500,000.00 Settlement Fund proposed. The Proposed Settlement is not made contingent upon any particular amount of Service Award or Attorneys' Fees and Expenses being awarded by the Court.

The full terms of the proposed Class Action Settlement are set forth in the "Stipulation of Settlement and Release," attached to the parties Joint Motion for Preliminary Approval of Class Action Settlement as Exhibit A. Importantly, the settlement is an opt-out settlement, allowing those who wish to do so to opt out and pursue actual damages,

statutory damages, or both on an individual basis, under a statute allowing successful plaintiffs to recover attorneys' fees and costs.

### B.  THE LEGAL STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" such that notice should be issued to the class.  4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a

15

preliminary finding of fairness.  *See* Manual for Complex Litigation, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Granting preliminary approval will allow Settlement Class Members to receive notice of the proposed Settlement terms, and of the date and time of the Final Approval Hearing at which Settlement Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties.  *See* Manual for Compl. Lit., §§ 13.14, 21.632.  However, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may or may not conduct a hearing.  Id. § 13.14.

## C. THIS SETTLEMENT FALLS WITHIN THE "RANGE OF REASONABLENESS" AS TO ITS FAIRNESS, ADEQUACY AND REASONABLENESS.

The Eleventh Circuit has enumerated six factors a district court should consider in evaluating the fairness, adequacy, and reasonableness of a class action settlement: (1) the plaintiff's likelihood of success on the merits, (2) the range of the plaintiff's possible recovery, (3) the point within the range of possible recovery at which settlement is fair, adequate, and reasonable, (4) the expected complexity, cost, and duration of litigation, (5) any opposition to the proposed settlement, and (6) the stage of the litigation at which settlement was reached. ("Faught Factors").  *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).

At this preliminary approval stage, this Court can readily determine that each of the Faught fairness factors weighs in favor of preliminarily approving the terms of this Settlement. First, the Settlement was reached in the absence of collusion, and is instead the product of good-

faith, informed and arm's length negotiations by competent counsel.  The Parties' informed and arm's length negotiations included two separate mediation sessions held on July 27, 2017 and October 16, 2017—both of which were conducted and overseen by Terrence M. White of Upchurch Watson White & Max, acting as mediator.  (Exhibit 2, Warwick Declaration).  As part of their ongoing mediations, the Parties then engaged in further negotiation of all details of this Settlement, along with further information and due diligence exchanges regarding the number and identity of loans to which Monthly Statements and/or Delinquency Notices had been sent after November 17, 2014 and before April 19, 2018, while the loan was flagged as having been discharged in a Chapter 7 bankruptcy.  Both parties were represented by separate and independent attorneys, attorneys who have no business relationships or financial dealings together.

Second, this matter is being settled by counsel experienced in this type of litigation after a motion to dismiss, a motion for partial summary judgment on the pleadings, discovery, and two full days of mediation.  Counsel for the Plaintiff previously has been appointed Class Counsel in a number of consumer class actions, including class actions brought under the FDCPA.  (Exhibit 2, Warwick Declaration).  Counsel for the Defendant has represented a number of different defendants in various consumer class action lawsuits.

Third, a preliminary review of the Faught fairness factors indicates that the terms of the Settlement are fair, adequate and reasonable. The only claim remaining in this case is the FDCPA claim for statutory damages. Pursuant to § 1692(a)(2)(B) of the FDCPA, statutory damages are limited to the lesser of 1% of the Defendant's Net Worth or $500,000.00.  Even if there were more than 500 Settlement Class members, all of whom were entitled in individual litigation to the full measure of statutory damages of $1000.00 under the FDCPA, the total

amount of the recovery on a class basis is limited by § 1692(a)(2)(B).  Defendant Ocwen has

agreed to create a Settlement Fund for the full $500,000.00.  Thus, the proposed settlement is as

large as it can possibly be under law, particularly where there are no actual damages recoverable

(as is the case here).

The settlement amount is very fair considering that Defendant has a belief that its

statements complied with the law and did not attempt to collect on a discharged debt.  Moreover,

even if successful at trial, it is not clear that Court would award classwide statutory damages of

$500,000.00, or that individuals could get $1000 each in individual litigation, because the

statutory damages per class are "up to $500,000" and the statutory damages per individual

claimant are "up to $1000.00."  In other words, if the case went to trial there is no guarantee any

specific amount of statutory damages could be awarded.  In fact, the vast majority of FDCPA

class action settlements involve relatively small statutory recoveries.  *See e.g., Gonzalez v.

Dynamic Recovery Solutions*, LLC, 2015 WL 738329, at *4 (S.D. Fla. 2015) (FDCPA statutory

damages claims to be dismissed in class action settlement in exchange for $15,000.00 *cy pres*

payment to Legal Aid where individual recoveries would be too small); *Harlan v. Transworld

Systems, Inc.*, 302 F.R.D. 319, 326 (E.D. Pa. 2014) ($24.46 per class member FDCPA statutory

damages approved); *Lewinowski v. MFP, Inc.*, 2014 WL 1418263, at *1 (M.D. Fla. 2014) (*cy

pres* award to Legal Aid approved due to small dollar amount of individual recovery of statutory

FDCPA damages).

Moreover, the case law surrounding claims for bankruptcy disclaimer language under the

FDCPA is complex and currently unsettled, creating considerable risk for the Plaintiff and the

putative class.  Some courts have in fact already concluded that Ocwen's bankruptcy disclaimer

language precludes correspondence containing such disclosures from being considered an

"attempt to collect a debt" under the FDCPA and similar state analogue statutes, *see, e.g., Lovegrove v. Ocwen Home Loans Serv., LLC*, 666 F. App'x 308 (4th Cir. 2016). Some other courts have concluded that similar bankruptcy disclaimer language is insufficient by itself to preclude claims alleging a loan servicer was impermissibly attempting to collect a discharged debt personally from the borrower through correspondence similar in content to that provided to nonbankrupt borrowers, *See e.g., Prindle v. Carrington Mortg. Serv., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4466838 (M.D. Fla. Aug. 24, 2016).  Application of such decisions to Ocwen could potentially create an impermissible conflict for Ocwen over the proper interpretation and application of the FDCPA in relation to its own bankruptcy disclaimer language.  Considering the complexity of the claims and that Ocwen's position on liability, the compromise is certainly within the range of reasonableness such that preliminary approval should be granted. Accordingly, this Court should find that the proposed Settlement appears to be within the range of reasonableness such that the Settlement Class should be certified for settlement purposes, notice should issue to the Settlement Class, and a final Fairness Hearing should be scheduled.

### D.  SERVICE AWARD AND PLAINTIFF'S ATTORNEY FEES AND EXPENSES

The proposed Settlement contemplates a service award of up to $3,500.00 to Plaintiff Grant, and up to $150,000.00 in attorney fees and costs to Class Counsel.  The service award and attorneys' fee and expense negotiations were conducted at arm's-length after an agreement for the class had been reached and is being paid over and above the relief to the class.  (Exhibit 2, Warwick Declaration).  Payment of attorney fees and costs is in addition to the relief provided to the class and will not diminish the relief to the class.  Settlement agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after material terms of the settlement have been agreed to between

the Parties. *See Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney fees").

Also, under the terms of this proposed Settlement, any service award or award of attorneys' fees and costs must be approved by this Court. The parties contemplate that the requests for service award, attorneys' fees, and costs will be made in connection with the Motion for Final Approval, with notice to the class of the Final Fairness hearing.

Class counsel expended considerable time and effort on this matter. First, the discovery proved to be difficult and time consuming as a result of the manner in which Ocwen retained its records. There was a substantial volume of documents and information produced in discovery. There was at least one discovery motion and hearing before the magistrate assigned to this case. There was a document intensive corporate representative deposition in Philadelphia, PA. Second, and most importantly, the arguments contained in the motion to dismiss and motion for partial summary judgment on the pleadings involved complex issues and novel legal theories. Plaintiff's Counsel was required to show expertise in bankruptcy law, federal preemption, class actions, and the FDCPA. Simply stated, this was not a run-of-the-mill FDCPA letter case. The amount of Attorney Fees set forth in the Settlement is equal to Plaintiff counsel's Lodestar for this matter. (Exhibit 2, Warwick Declaration).

Given the facts and circumstances of this case, the proposed amounts for the potential service award, attorneys' fee, and costs award are certainly within the range of reasonableness such that notice should be issued to the class. Therefore, this Court should find that the Attorney Fee segment of the Settlement Agreement also falls with the range of reasonableness to warrant

granting of preliminary approval.[1]

### E.  THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

Notice is an integral part of Rule 23(b)(3).  Class actions under this subdivision are only allowed when common questions of fact or law predominate and class-action treatment is thought to be superior to other available means of settling the controversy.  *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 70 S. Ct. 652 (1950).  Without the notice requirement, it would be constitutionally impermissible to give the judgment binding effect against the absent class members.  Notice to the class must be given before entry of judgment in order to allow class members the opportunity to either participate in the proceedings, or to opt out of the proceedings.   Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-176 (1974) (notice and opportunity to opt out required by due process).  Notice must be sent well before the merits of the case are adjudicated.  *Brown v. Colegio de Abrogados de Puerto Rico*, 613 F.3d 44, 51 (1st Cir. 2010) (The purpose of the rule regarding notice for a class action is to ensure that the plaintiff class receives notice of the action well before the merits of the case are adjudicated.)

The Eleventh Circuit's position on class notice in Rule 23(b)(3) certified class actions is one of strict adherence to due process.  *Cohen v. Office Depot, Inc*., 204 F.3d 1069, 1078 (11th Cir. 2000) (holding that certification under Rule 23(b)(3) would require that the class members receive notice of the suit "well before the merits of it are adjudicated.") citing *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995); see also Fed. R. Civ. P. 23(c)(2); 7B Wright, Miller & Kane.

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members

---

[1] Plaintiff's Counsel will submit time records and supporting affidavits in connection with the Motion for Final Approval and the Final Fairness hearing.

who can be identified through reasonable effort. "The notice must clearly and concisely state in plain, easily understood language:

    (i) the nature of the action;

    (ii) the definition of the class certified;

    (iii) the class claims, issues, or defenses;

    (iv) that a class member may enter an appearance through an attorney if the member so desires;

    (v) that the court will exclude from the class any member who requests exclusion;

    (vi) the time and manner for requesting exclusion; and

    (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Fed. R. Civ. P. 23(b)(3).

Exhibit A to the Stipulation of Settlement and Release is a proposed class notice which the parties believe satisfies the requirements of Rule 23(b)(3), and which will provide Settlement Class Members with all the information necessary to file claims, opt out, or file objections to this Settlement.

Also, Local Rule 4.04(b) provides: "If a determination is sought that the action shall be maintained under Rule 23(b)(3), the motion shall also suggest a means of providing, and defraying the cost of, the notice required by Rule 23(c)(2)." If the proposed class is certified pursuant to Rule 23(b)(3), notice approved by this Court may be sent to the class members by first class U.S. Mail through a third-party class action administrator. Defendant Ocwen already has a class list, compiled in the process of ascertaining the Class Loans.  Accordingly, Plaintiffs request that this Court approve the Notice in the form of Exhibit A to the Stipulation of Settlement and Release and that this Court order notice be issued to the class upon preliminary

approval by the due dates set forth in the Settlement Agreement.

### F.  PROPOSED ORDER

Attached to the Settlement Agreement as Exhibit E, is a Proposed Order Granting Preliminary Approval.  The parties believe that this order reflects the legal analysis that must be completed by this Court and sets forth the deadlines and obligations of the parties under the proposed Settlement.

## CONCLUSION

For the reasons set forth above, this Court should enter the Proposed Preliminary Approval Order attached to the Settlement Agreement and directing that notice to be issued to the class and taking this Settlement to the next stage of resolution.

Dated:  May 7, 2018

**VARNELL & WARWICK, P.A.**

s/ Brian W. Warwick
BRIAN W. WARWICK, Florida Bar No.:  0605573
JANET R. VARNELL, Florida Bar No.:  0071072
DAVID K. LIETZ (ADMITTED PRO HAC VICE)
P.O. Box 1870
Lady Lake, FL  32158
Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
*jvarnell@varnellandwarwick.com*
*bwarwick@varnellandwarwick.com*
*dlietz@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

**Attorneys for Plaintiff**

23

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of May, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Timothy A. Andreu
BRADLEY ARANT BOULT CUMMINGS LLP
100 N. Tampa Street, Suite 2200
Tampa, Florida  33602

Michael R. Pennington (pro hac vice)
Robert J. Campbell (pro hac vice)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35173

Attorneys for Defendant

/s/ Brian W. Warwick
**BRIAN W. WARWICK**

24