# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

GLENDA GRANT, f/k/a
GLENDA RANDOLPH, individually
and on behalf of a class of
persons similarly situated,

        CASE NO.: 3:15-cv-01376-J-34-PDB

        Plaintiff,

vs.

OCWEN LOAN SERVICING, LLC,

        Defendant.

_____/

## FINAL ORDER AND JUDGMENT

This matter is before the Court on the Parties' Joint Motion for Final Approval of Class Action Settlement, and Supporting Memorandum, (Doc. 105; "Motion"), filed on January 8, 2019, and Plaintiff's Motion for Approval of Attorneys' Fees and Incentive Award and Incorporated Memorandum of Law (Doc. 101; "Fee Motion"), filed on November 29, 2018. On August 10, 2018, the Court entered an Order Preliminarily Certifying a Class for Settlement Purposes, Granting Preliminary Approval of Class Settlement, and Directing the Issuance of Notice (Doc. 96; "Preliminary Approval Order"). In the instant Motions, the parties assert that they have complied with the requirements of the Preliminary Approval Order and request that the Court finally approve the terms of their settlement as set forth in the Stipulation of Settlement and Release (Doc. 84-1; "Settlement"), including the incentive award and

attorneys' fees provisions.   For the reasons that follow, the Court finds that the Motions are due to be **GRANTED** and the proposed settlement **APPROVED**.

## I.      Background

Plaintiff Glenda Grant ("Plaintiff") is a residential mortgage borrower whose loan was serviced by Defendant Ocwen Loan Servicing, LLC ("Ocwen").   As a mortgage servicer, Ocwen's collection and crediting of borrower payments is primarily regulated by the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), and Regulation Z, 12 C.F.R. §§ 1026.1, *et seq.*   Among other things, TILA and Regulation Z require mortgage servicers to provide borrowers—including many members of the proposed Settlement Class[1] who have been discharged in bankruptcy but retain possession and/or title to their homes—with a periodic monthly account statement.  *See, e.g.*, 12 C.F.R. § 1026.41.  Regulation Z also tightly controls the format and content of such periodic statements.  *Id.* § 1026.41(d).  During the time period relevant to this Action, the Consumer Financial Protection Bureau ("CFPB") had approved only one form of periodic monthly statement for mortgage servicers to use with delinquent closed-ended loans, such as home mortgage loans.  *See* 12 C.F.R. § 1026, App'x H, Form H-30(B).  No separate form or instructions were provided for discharged borrowers with intact mortgage liens against the property in which they continued to reside.

Other statutes and regulations govern a mortgage servicer's communications with borrowers in default.  For example, where servicing rights to a loan are acquired by a mortgage servicer while that loan is in default, the Fair Debt Collection Practices Act ("FDCPA") will

---

[1] The Settlement Class is defined in paragraph 6, on pages 8 and 9 of the Preliminary Approval Order.  Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Preliminary Approval Order, and Section 2 of the Settlement.

apply.  Among other things, the FDCPA prohibits persons attempting to collect on a debt from making false or misleading representations about the character, amount, or legal status of that debt.  *See* 15 U.S.C. § 1692e(2)(A).  When dealing with borrowers in default, mortgage servicers must also comply with the loss mitigation requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*, and Regulation X, 12 C.F.R. §§ 1024.1, *et seq.*, which require, among other things, that mortgage servicers provide borrowers in default with delinquency notices containing specific content in a specified format.  *See, e.g.*, 12 C.F.R. § 1024.39.

Plaintiff filed this Action on November 15, 2015.  (Doc. 1).  In the initial complaint, Plaintiff alleged that Ocwen violated Section 1692e(2)(A) of the FDCPA and the Florida Consumer Collection Practices Act ("FCCPA") by sending periodic monthly statements and delinquency notices to borrowers, like her, who had previously received Chapter 7 bankruptcy discharges of personal liability on their home mortgage loans, but whose homes were still subject to valid *in rem* mortgages.  It is undisputed that the form and content of Ocwen's Monthly Statements, as used during the relevant time period, attempted to follow the requirements of TILA and Regulation Z, and also that Ocwen's regular Monthly Statements and Delinquency Notices that were sent during the relevant time period included bankruptcy disclaimer language, explaining that persons who had been discharged in bankruptcy should consider the correspondence to be for informational purposes only.  In Plaintiff's view, however, the Monthly Statements and Delinquency Notices were not required to be sent to borrowers whose personal liability had been discharged in bankruptcy, and improperly suggested that discharged borrowers remained personally obligated to continue making

payments on their home loans. Violations of the FDCPA allow successful borrowers two kinds of damages: actual damages as proven by the claimant and statutory damages on a classwide basis. 15 U.S.C. § 1692k(a). Plaintiff sought only statutory damages.

Through discovery, Ocwen produced several thousand pages of documents to Plaintiff regarding the statements, notices, and practices at issue in this action, as well as data sufficient to identify the putative class. (Settlement ¶ 1.4). Thereafter, Plaintiff deposed an Ocwen representative regarding a variety of topics, including Ocwen's procedures for identifying bankruptcy filings and discharges on borrowers' accounts, and Ocwen's procedures for distributing Monthly Statements, including the content, disclosures and disclaimers contained in the Monthly Statements, particularly with respect to borrowers who had previously received Chapter 7 discharges in bankruptcy of personal liability on their loans. (*Id.*). Following such discovery, the Parties engaged in extensive mediation. The Parties' mediation efforts included two separate mediation sessions held on July 27, 2017 and October 16, 2017—all of which were conducted and overseen by independent mediator Terrence M. White of Upchurch Watson White & Max. The mediation process involved continuing exchanges by the Parties of informal discovery and confirmatory due diligence information and data. (Settlement ¶ 1.6; *see also* Docs. 66-1, 72-1, 76).

Based on the results of Class Counsel's investigation and the Parties' cooperative due diligence efforts, Plaintiff filed the Operative Complaint (Doc. 89) on May 4, 2018. In doing so, Plaintiff elected to not reassert her FCCPA claim, but reasserted her FDCPA claim on behalf of a nationwide class of borrowers in order to capture all loans potentially affected by the central issue in this Action—in other words, "[a]ll borrowers on home mortgage loans who

were sent a Monthly Statement and/or Delinquency Notice by Ocwen Loan Servicing, LLC between November 17, 2014 and April 19, 2018 while their loan was flagged in Ocwen's loan servicing system as having received a Chapter 7 bankruptcy discharge." (*See* Operative Complaint ¶ 18; *accord* Settlement ¶ 2.1.30).

On August 10, 2018, the Court entered the Preliminary Approval Order preliminarily certifying a class for settlement purposes only, preliminarily approving the parties' proposed class settlement, appointing class representatives and class counsel, approving the notice plan, and setting a final fairness hearing. (Doc. 96). The Settlement Class is comprised of the 196,200 primary, joint and/or co-borrowers on the 137,636 home mortgage loans who received the Delinquency Notices and Monthly Statements at issue in this Action. (*Id.* ¶ 5(b)). After distributing notice of the Settlement to the Settlement Class Members, the parties filed the instant Motion in which they seek final approval of the Settlement. In support of the Motion, the parties filed the declaration of the settlement administrator, Dorothy Sue Merryman (Doc. 105-1; "Merryman Decl."), and the declaration of Class Counsel, Brian Warwick (Doc. 105-2; "Warwick Decl."). On January 11, 2019, the parties filed the settlement administrator's supplemental declaration (Doc. 106-1; "Merryman Supp. Decl."). The Court held the Fairness Hearing on January 17, 2019. (Doc. 107).

## II.     The Settlement

The Settlement offers each Settlement Class Member a share of a $500,000 Settlement Fund (Settlement ¶ 2.1.32), which equals the maximum amount of statutory damages available to a class under the FDCPA, 15 U.S.C. § 1692k(a)(2)(B). The Settlement Fund will be distributed in an equal amount to each Class Loan. (Settlement ¶¶ 4.2.2 & 4.2.3). Any court-

approved attorneys' fees, costs and incentive awards of Class Counsel and the Class Representative will *not* be deducted from the Settlement Fund, but will be paid by Ocwen separately and in addition to the Settlement Fund. (*Id*. ¶ 4.3). Additionally, Ocwen is separately funding the costs of notice and settlement administration (nearly $200,000.00). (*Id*. ¶ 4.4; Preliminary Approval Order ¶ 15; Merryman Decl. ¶ 22). Any persons who wished to pursue actual damages, or actual damages together with individual statutory damages, were given the opportunity to do so by opting out of the Settlement Class. Because the FDCPA allows successful individual plaintiffs the right to recover both their costs and their reasonable attorneys' fees, 15 U.S.C. § 1692k(a)(3), opting out of the Settlement Class to pursue individual relief was a meaningful option.

In exchange for the settlement relief, Settlement Class Members will release Ocwen and certain of its related and affiliated entities and persons (the "Released Parties," as defined in Paragraph 2.1.27 of the Settlement) of, *inter alia*, all claims against the Released Parties, or any of them,

> arising or resulting in whole or in part from, or in any way whatsoever relating to or caused in whole or in part by, their receipt of Monthly Statements and/or Delinquency Notices sent on or after November 17, 2014 and after their personal liability on the loan was discharged in a Chapter 7 bankruptcy.

(Settlement ¶ 8.1). In other words, the release here is specific to the subject matter addressed in this Action, and does not contemplate a general release of any and all claims of any kind against Ocwen on unrelated subjects. The Settlement and release also will not alter, extinguish, release or modify the terms of the Settlement Class Members' loans that are still in effect as of the Final Settlement Date. (*Id.* ¶ 8.6).

## III.    Adequacy of Class Notice

Rule 23(e) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  *See* Rule 23(e)(1)(B). With regard to Rule 23(b)(3) classes, the Rule states that

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B).  Thus, the Rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Additionally, due process requires that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *See id.* at 174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  "In every case, reasonableness is a function of anticipated results, costs, and amount involved."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977).[2]  Reasonableness also depends on the information available to the parties.  *See id.* at 1098.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

In this case, after revising the proposed class notice, the Court approved the form and content of the parties' proposed notice plan as "reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Action, the terms of the proposed Settlement," and of their rights under and with respect to it. (Preliminary Approval Order ¶ 14). The Court further concluded that the proposed notice plan satisfied "all applicable requirements of law, including, but not limited, 28 U.S.C. § 1715, Federal Rule of Civil Procedure 23(c), and the United States Constitution (including the Due Process Clause)." (*Id.*) The Settlement Administrator has now verified that notice was provided in accordance with the approved plan, and that it reached over 98% of Settlement Class Members. (Merryman Decl. ¶¶ 11-17).[3] There is no fact in evidence to the contrary.

In addition, Settlement Class Members could access the settlement website beginning on August 27, 2018. (*Id.* ¶ 4). The settlement website allowed Settlement Class Members to view and download copies of the Class Notice, Settlement Agreement, Preliminary Approval Order, and Operative Complaint. (*Id.*). The settlement website also included a summary of important deadlines, instructions for opting-out or objecting, and information on how to contact the Settlement Administrator. (*Id.* ¶ 5, Ex. A). Because the parties complied with the agreed-to notice provisions as preliminarily approved by the Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court will

---

[3] The Settlement Administrator attempted to send notice, via first class mail, to all members of the Settlement Class. The roster of Settlement Class Members contained 137,636 loans, with 196,200 potential Settlement Class Members as borrowers on the loans. A total of 2,718 class notices were returned by the United States Postal Service as undeliverable and without forwarding address information. (*See* Merryman Decl. ¶ 17). Thus, the direct mail reach rate was 98%. (*Id.*).

finally conclude that the notice provided in this case satisfied the requirements of Rule 23(c)(2)(B).

## IV. Certification of Settlement Class

The Court notes that there have been no objections to class certification and no change in circumstances to alter the Court's previous conclusions. Thus, the Court will finally certify the class according to the reasons stated in the Preliminary Approval Order. (*See* Preliminary Approval Order at 3-9).

## V. Final Approval of Class Action Settlement

### A. The Standards for Judicial Approval of Class Action Settlements

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *See id.* at 428; *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2). The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable:

> (1)     the likelihood of success at trial;
> (2)     the range of possible recovery;
> (3)     the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
> (4)     the complexity, expense and duration of the litigation;
> (5)   the substance and amount of opposition to the settlement; and
> (6)     the stage of the proceedings at which the settlement was achieved.

*See Bennett*, 737 F.2d at 986. In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," is "hesitant to substitute its own judgment for that of counsel." *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). In addition, effective December 1, 2018, Rule 23 itself was amended to add a mandatory but non-exhaustive set of similar final approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). For the reasons discussed below, the application of these factors, as well as the analogous *Bennett* factors, leads the Court to conclude that the proposed settlement is fair, adequate, and reasonable under the circumstances of this case.

### B. The Settlement Satisfies the Standards for Judicial Approval

#### 1. Class Counsel and Plaintiff Have Adequately Represented the Settlement Class.

The first factor that Rule 23(e)(2) now instructs courts to consider when evaluating whether to approve a class settlement is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class

counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *Id.*[4] The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case," *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 319 (3d Cir. 1998) (internal quotation omitted). Here, the Court has already found that Plaintiff and Class Counsel were "informed and familiar with the legal and factual issues" in this case during the Parties' settlement negotiations, through the extensive confirmatory discovery they exchanged. (Preliminary Approval Order ¶ 8). The record continues to support that finding. Through their formal and informal discovery efforts, which included depositions, document production, and written discovery, Plaintiff and Class Counsel were able to confirm Ocwen's practices with regard to the Class, the exact persons who made up the Class, and the legal landscape both before and after the CFPB clarified a servicer's obligations for communications with discharged debtors.

The "conduct of negotiations" further confirms the adequacy of Class Counsel and Plaintiff's representation of the absent Class Members. *See* Fed. R. Civ. P. 23(e)(2)(A), Committee Notes on Rules – 2018 Amendment ("The conduct of the negotiations may be important as well."). Having adequately informed themselves regarding the merits of the case, Class Counsel negotiated the resolution of the case through two separate mediation sessions. (Settlement ¶¶ 1.6–1.7; Warwick Decl. ¶¶ 3, 4). Moreover, the settlement that was ultimately

---

[4] The Committee's guidance is consistent with the pre-amendment decisions within this Circuit and others, which have held that plaintiffs and their counsel must have "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008); *accord Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 319 (3d Cir. 1998) (noting that the purpose behind this factor is to assess whether the parties obtained "an adequate appreciation of the merits of the case before negotiating" the settlement).

reached—after more than four months of negotiation—offers Settlement Class Members an equal share of a Settlement Fund that matches the maximum class-wide statutory damage relief available under the FDCPA, without having to file a claim, and with the right to opt out having been afforded, further discovery would yield no better result.

Under these circumstances, the Court finds that Class Counsel and Plaintiff adequately represented the Settlement Class and this factor favors the Settlement's final approval.

### 2. The Settlement is the Product of Arm's-Length Bargaining and Mediation

In evaluating the fairness, adequacy, and reasonableness of a settlement, a court must ensure that the settlement is not the product of collusion by the negotiating parties. Fed. R. Civ. P. 23(e)(2)(B); *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 & n.6 (11th Cir. 1994). Here, the Court has already found that the Parties' Settlement "is the result of serious, informed, non-collusive, arm's length negotiations involving experienced counsel informed and familiar with the legal and factual issues of the Action." (Preliminary Approval Order ¶ 8). The record continues to support the Court's earlier finding. The Parties' protracted settlement negotiations occurred after substantial discovery and were overseen by a well-regarded, independent mediator Terrance M. White. *See* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules – 2018 Amendment ("[T]he involvement of a neutral or court-affiliated mediator … may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *accord Poertner v. Gillette Co*., 618 F. App'x 624, 630 (11th Cir. 2015). The end result of the Parties' negotiations is a Settlement that offers all Settlement Class Members an equal share of the Settlement Fund matching the maximum classwide relief available in an FDCPA statutory damage class action, with any attorneys' fees,

expenses, and incentive awards to be paid separately. Both the record in this case and the substantive terms of the Settlement reflect a good faith, arm's-length bargaining process. Therefore, the Court finds that the Settlement was not the product of fraud or collusion.

### 3. The Relief Provided for the Settlement Class is Adequate.

Under Rule 23(e)(2)(C), the relief provided for the class in the settlement must be adequate, taking into account:

> (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). These factors are analogous to several of the *Bennett* factors, which require courts to consider the likelihood of success and range of possible recovery for the class at trial, measured against the trial's anticipated complexity, cost and duration. *Bennett*, 737 F.2d at 986. Whether under Rule 23(e)(2)(C) or the *Bennett* factors, it is not the value or nature of the settlement relief alone that is decisive, but whether that relief is reasonable when compared with the relief "plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing." *Krell*, 148 F.3d at 322 (internal quotation omitted). Accordingly, the relevant inquiry is whether the proposed settlement affords relief that "falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation." *Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997) (internal quotation omitted), *aff'd*, 166 F.3d 581 (3d Cir. 1999).

Here, the Settlement affords relief that closely tracks the best possible classwide recovery if Plaintiff were to successfully litigate this case through trial. In the Operative

Complaint, Plaintiff seeks only classwide statutory damages. The maximum amount of statutory damages available to a class under the FDCPA is $500,000.00—which is the amount of the Settlement Fund this Settlement offers.

By contrast, if not settled, the Court finds that there exists real potential for years of further litigation, as well as a possibility that Ocwen could prevail on the merits or defeat contested class certification. Thus, the Settlement offers the maximum classwide statutory relief available to the class, and it does so now— thereby avoiding the risks, costs, and delay inherent in continuing to litigate the Action, including from contested class certification proceedings, additional discovery, dispositive motions, pretrial proceedings, trial and appeal. Moreover, attorneys' fees under the Settlement are subject to a cap but not a floor, and are to be paid separately from the Settlement Fund, as and when awarded by the Court. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii) (instructing court's to consider "the terms of any proposed award of attorney's fees"). The fact that class member relief is not conditioned on any amount of attorneys' fees being awarded by the Court further supports the adequacy and fairness of this Settlement.

The process by which the settlement proceeds will be distributed to Settlement Class Members also supports approval of the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(ii) (instructing courts to consider "the effectiveness of any proposed method of distributing relief to the class"). Every Settlement Class Member who has not opted out of the Settlement Class will automatically receive his or her allocation of the Settlement Fund (which will be calculated on an equal basis per Class Loan), within sixty days of the Final Settlement Date. Settlement Class Members do not need to submit a claim, do not need to have a claim approved, and do

not need to do anything else to obtain their share of the Settlement Fund. Finally, any Settlement Class Member who believed that he or she had a viable claim for compensatory damages had the right to opt out and pursue such a claim, along with the individual statutory damages and attorneys' fees and costs available to individual litigants under the FDCPA.

Accordingly, consideration of the Class's likelihood of success and potential recoveries from trial, measured against the complexity and cost of trial and the relief offered by the Settlement, favors the final approval of the Settlement.

### 4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The Settlement also treats Settlement Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). The Settlement Fund will be divided equally among all of the Class Loans held by the Settlement Class Members. This is an objectively reasonable way to distribute a settlement fund comprising $500,000 in statutory damages under the FDCPA, given that the purpose of statutory damages under the FDCPA is to deter future misconduct, not to compensate the class members for actual harm, *see, e.g.*, *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1067 (9th Cir. 2011), and that any Settlement Class Member who suffered actual damages was free to opt out of the Settlement Class to pursue an individual action to recover those damages (along with attorneys' fees authorized by statute).

Upon review, the Court finds that the scope of the release provisions required by the Settlement do not operate in an inequitable manner. *See* Rule 23(e)(2)(D), Committee Notes on Rules – 2018 Amendment (instructing courts evaluating Rule 23(e)(2)(D) to consider the extent to which "the scope of the release may affect class members in different ways"). Instead, the required release is narrowly limited to claims arising from the specific facts giving rise to

this action: the receipt of Monthly Statements and/or Delinquency Notices by borrowers after their personal liability on the loan was discharged in Chapter 7 bankruptcy. (Settlement ¶ 8.1).

5.      **The Substance and Amount of Any Opposition to the Settlement**

Only three Settlement Class Members submitted objections and only 191 borrowers on 142 loans within the Settlement Class submitted requests for exclusion, resulting in an opt-out rate of 0.1%. (Merryman Decl. ¶ 21; Merryman Supp. Decl. ¶¶ 3-4; Doc. 102).[5] The low opt-out and objection rates weigh in favor of granting final approval to the Settlement. *See, e.g.*, *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014).

None of the three objections to the Settlement undermine the conclusion that the Settlement is fair, adequate, and reasonable. The objections of Audrey C. Brown (Merryman Decl., Ex. C) and David J. Almaguer (Doc. 99) do not relate to the terms of the Settlement or the alleged conduct that gave rise to Plaintiff's complaint. For the reasons stated on the record at the Fairness Hearing, the Court overrules both objections and finds that they do not warrant rejection of the Settlement.

The final objection was filed by Settlement Class Member Valen Wayne Reagan. (Doc. 100). Mr. Reagan objects to the amount of the Settlement Fund, based on his belief that the "$500,000.00 settlement is not sufficient to deter [Ocwen's] conduct in the future." (Doc. 100). However, Mr. Reagan's objection fails to appreciate that, pursuant to the statute, the

---

[5] As reflected in the Merryman Declaration (Doc. 105-1) and Supplemental Declaration (Doc. 106-1), three requests for exclusion were submitted after the mandatory December 13, 2018 exclusion deadline. One of those requests for exclusion was filed with the Court on December 14, 2018. (Doc. 102). The other two requests for exclusion were received by the Settlement Administrator well after the exclusion deadline: on December 26, 2018, and January 2, 2019, respectively. (*See* Merryman Supp. Decl. ¶ 4; *id*. Exs. A & B). For the reasons discussed at the Fairness Hearing, and with the consent of the parties, all individuals who requested to be excluded by the date of the Fairness Hearing are excluded from the Settlement Class. (Doc. 107). As such, these untimely-submitted exclusions are accepted and those individuals and loans are excluded from the Settlement Class.

statutory damages award is capped at $500,000 regardless of the size of the defendant, 15 U.S.C. § 1692k(a)(2)(B). Thus, the Court has no legal authority to award more in statutory damages in this litigation than what is provided for in this Settlement. Moreover, Mr. Reagan's concern regarding deterrence is largely resolved by the CFPB's promulgation of a new rule specifying for the first time how notices and statements to bankruptcy discharged borrowers are to be handled. Accordingly, as discussed at the Fairness Hearing, the Court overrules this objection as well.

In sum, having considered the *Bennett* factors, as well as the factors set forth in Rule 23(e), the Court finds that the settlement is not the product of collusion and instead is fair, adequate, reasonable, and in the best interest of the parties.

## VI.    Incentive Fee Award

In the Settlement Agreement, the parties agreed to an incentive award of $3,500 to the Class Representative, Glenda Grant. The Court informed the Settlement Class Members of this proposed award in the Class Notice and no Settlement Class Member has objected to the award. Courts routinely approve incentive awards to "compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006) (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)) (collecting cases); *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1218 (11th Cir. 2018) ("We do not view granting a monetary award as an incentive to a named class representatives as categorically improper."). Grant put in substantial time representing the Class in this matter, including preparing discovery responses, and participating via telephone in both days of mediation. In

light of Grant's efforts in this case and in the absence of any objection from the Settlement Class Members, the Court finds that this incentive award is appropriate and reasonable. *See North Star Capital Acquisitions, LLC v. Krig*, Nos. 3:07-cv-264-J-32MCR, et al., 2011 WL 65662, at *6 (M.D. Fla. Jan. 10, 2011) (approving a $5,000 incentive award); *Muransky*, 905 F.3d at 1219 (rejecting objector's challenge to a $10,000 incentive award).

## VII. Attorneys' Fees and Costs

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Under the FDCPA, a prevailing plaintiff may recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." *See* 15 U.S.C. § 1692k(a)(3). Here, Ocwen agreed to pay Class Counsel $150,000 in attorneys' fees and costs as part of the Settlement Agreement. However, the Court "is not bound by the agreement of the parties as to the amount of attorneys' fees." *See Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980). Rather, the Court has an independent responsibility to "assess the reasonableness of attorneys' fees proposed under a settlement of a class action . . . ." *See id.* This duty applies regardless of whether the fees are paid from a common fund settlement or otherwise. *See* Rule 23(h), adv. comm. notes, 2003 amend.; *see also Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998).

In support of his request for approval of the attorneys' fees and costs award, Class Counsel submits his declaration along with detailed billing records and receipts. (Doc. 101-1). Counsel also provides declarations from three other attorneys, including an expert witness on attorneys' fees, who opine on the reasonableness of the fee request as well as counsel's

reputation and expertise. (Doc. 101-2, 101-3, 101-4). The Court has carefully reviewed the materials presented by counsel and the record in this case. In light of the time and expense necessary to litigate this matter, the result obtained for the Settlement Class, the risk to counsel of no recovery, and the skill necessary to perform the legal service properly, the Court is convinced that the overall amount of attorneys' fees requested by Class Counsel is reasonable, fair and proper.[6] Accordingly, the Court will grant the Fee Motion and approve the $150,000 award in attorneys' fees and costs.

**VIII.  Conclusion**

Upon consideration of the Motions, the arguments raised at the Fairness Hearing, as well as all matters of record, the Court finds that there is good cause to finally approve the proposed Settlement. In accordance with the requirements of Rule 23(e), the Court concludes that the Settlement, including the attorneys' fees award and incentive award, is fair, reasonable, and adequate. Thus, the Court determines that it is appropriate to grant the Motions. Accordingly, it is

**ORDERED**:

1.      The Parties' Joint Motion for Final Approval of Class Action Settlement (Doc. 105) is **GRANTED**.

2.      **Jurisdiction.** Because due, adequate, and the best practical notice has been given and all potential settlement class members have been given the opportunity to exclude

---

[6] The Court's conclusion that the overall amount of attorneys' fees requested in this action is reasonable does <u>not</u> constitute a determination that the specific hourly rate requested by counsel in this action is appropriate and should not be cited for such a proposition. The Court does not reach this issue because even at a reduced rate, the overall amount of fees requested in this action is plainly reasonable.

themselves from or object to the Settlement, the Court finds and concludes that it has personal jurisdiction over all Settlement Class Members and that venue is proper.[7] The Court also finds and concludes that it has subject matter jurisdiction over this action, including, without limitation, jurisdiction to approve and enforce the Settlement, grant final certification to the Settlement Class, and dismiss the Action on the merits and with prejudice, all while retaining jurisdiction to enforce the Settlement as provided below.

3. **Final Class Certification.** The Settlement Class preliminarily certified by the Court on August 10, 2018, is hereby finally certified for settlement purposes only, as it fully satisfies all the applicable requirements of Rule 23 and due process. The Settlement Class is comprised of:

> All borrowers on home mortgage loans who were sent a Monthly Statement and/or Delinquency Notice by Ocwen Loan Servicing, LLC between November 17, 2014, and April 19, 2018, while their loan was flagged in Ocwen's loan servicing system as having received a Chapter 7 bankruptcy discharge.
>
> Excluded from the Settlement Class are: (a) Ocwen's board members and executive level officers; (b) person who timely and properly excluded themselves from the Settlement Class as provided in the Settlement; and (iii) the federal district and magistrate judges assigned to this Action, along with their spouses and persons within the third degree of relationship to them.

(Preliminary Approval Order at 8-9). As set forth in the declaration (Doc. 105-1) of Dorothy Sue Merryman, senior project manager of Class-Settlement.com, the Settlement Administrator, there were 136 requests for exclusion covering 139 Class Loans and 186 potential members of the Settlement Class that were submitted to the Settlement Administrator

---

[7] *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12 (1985).

on or before the December 13, 2018 mandatory exclusion deadline and that complied with the requirements of Section 6 of the Settlement. (Merryman Decl. ¶ 21). Those 136 timely and validly submitted requests for exclusion are reflected in Exhibit D to Ms. Merryman's declaration. (*Id*., Ex. D). The Court approves each of the 136 timely and validly submitted requests for exclusion that are reflected in Exhibit D to Ms. Merryman's declaration, and thereby excludes from the Settlement Class each of the 139 Class Loans and 186 potential Settlement Class Members covered by those exclusion requests.

In addition, as set forth in the Merryman Declaration (*id*. ¶ 21 n.1) and as reflected on the docket, one request for exclusion was belatedly filed with the Court by potential Settlement Class Members Manuel C. Hernandez and Virginia Garcia Hernandez on December 14, 2018, one day after the December 13, 2018 exclusion deadline. (*See* Doc. 102). For the reasons stated at the Fairness Hearing, and with the consent of the parties, the Court approves the belated request for exclusion. Therefore, Manuel C. Hernandez and Virginia Garcia Hernandez are excluded from the Settlement Class.

Finally, as set forth in the Merryman Supplemental Declaration (Doc. 106-1), two additional requests for exclusion were received by the Settlement Administrator after the December 13, 2018 exclusion deadline. (*Id*. ¶ 4, Ex. C). On December 26, 2018, the Settlement Administrator received a request for exclusion from potential Settlement Class Member Renee Metoyer. (*Id*., Ex. A). On January 2, 2019, the Settlement Administrator received a request for exclusion from potential Settlement Class Members Corrine E. Humm and Dorothy M. Wenzler. (*Id*., Ex. B). For the reasons stated at the Fairness Hearing, and with the consent of the parties, the Court approves the belated requests for exclusion submitted

by Renee Metoyer, Corrine E. Humm and Dorothy M. Wenzler. Therefore, Renee Metoyer, Corrine E. Humm, and Dorothy M. Wenzler are excluded from the Settlement Class.

4.    **Class Notice.** The form, content, and method of dissemination of the Class Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice provided sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to the Settlement Class, and fully satisfied the requirements of Rule 23 and due process.

5.    **Final Settlement Approval.** The Court finally approves the terms of the Settlement as being a fair, reasonable, and adequate resolution of the dispute between the parties.

(a)    The Parties are hereby directed to implement and consummate the Settlement according to its terms and provisions. The Parties are also directed to take all steps necessary and appropriate to provide the Settlement Class Members with the benefits to which they are entitled under the Settlement.

(b)    At the time that all checks have been paid to the Settlement Class Members and time for cashing those checks has expired, any funds remaining shall be payable as a cy pres award to:

> Jacksonville Area Legal Aid, Inc.
> 126 W. Adams Street
> Jacksonville, FL 32202
> (904) 356-8371

6.    **Binding Effect.** The terms of the Settlement and of this Final Order and Judgment shall be forever binding on the Plaintiff, Ocwen, and all Settlement Class Members

who did not timely and validly exclude themselves from the Settlement Class as reflected in Paragraph 3 above, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors. The terms of the Settlement and of this Final Order and Judgment shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons or entities, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Settlement's Release.

7. **Release.** The Court hereby approves, incorporates and adopts the release set forth in Section 8 of the Settlement. The Release hereby is made effective as of the Final Settlement Date, and will forever discharge Ocwen and the Released Parties of and from any liability to the Plaintiff and the Settlement Class Members who did not exclude themselves from the Settlement Class as reflected in Paragraph 3 above, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors, arising in whole or in part from the Released Claims as defined in the Settlement. For the avoidance of all doubt, the Release does not discharge Ocwen and the Released Parties of and from any liability they may have to the potential Settlement Class Members who excluded themselves from the Settlement Class, as reflected in Paragraph 3 above.

8. **Retention of Jurisdiction.** Without in any way affecting the finality of this Final Order and Judgment, the Court expressly retains jurisdiction: (a) as to the administration, consummation, enforcement, and interpretation of the Settlement, including the Release, and

the Final Order and Judgment; (b) to resolve any disputes concerning settlement class membership or entitlement to benefits under the terms of the Settlement; and (c) over all Parties hereto, including members of the Settlement Class, for purposes of enforcing and administering the Settlement and this Action generally, until each and every act agreed to be performed by the Parties has been performed in accordance with the Settlement.

9.      **No Admissions.** Neither this Final Order and Judgment, nor the Settlement, nor any other document referred to herein, nor any action taken to carry out this Final Order and Judgment, is, may be construed as, or may be used as an admission or concession by or against Ocwen or the Released Parties as to the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability.  Entering into or carrying out the Settlement, and any negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to Ocwen's denials or defenses, and shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the Settlement and this Final Order and Judgment; provided, however, that the Settlement and Final Order and Judgment may be filed in any action brought against or by Ocwen or the Released Parties to support a defense of res judicata, collateral estoppel, release, waiver, good- faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

10.      **Termination of Settlement.** This Final Order and Judgment shall become null and void and shall be without prejudice to the rights of the Parties and Settlement Class Members, all of whom shall be restored to their respective positions existing immediately

before the Court entered its August 10, 2018 Order, if: (a) the Settlement does not reach the Final Settlement Date as defined in Section 2 of the Settlement; (b) the Settlement is terminated by a Party in accordance with its provisions; or (c) the Settlement does not become effective for any other reason.

11. **Attorneys' Fees and Incentive Award.** Plaintiff's Motion for Approval of Attorneys' Fees and Incentive Award and Incorporated Memorandum of Law (Doc. 101) is **GRANTED**. The Court approves the payment of $3,500 to Glenda Grant as an incentive award. In addition, the Court approves the agreed attorneys' fees and expense award to Class Counsel in the amount of $150,000.

12. **Dismissal of Action.** Subject to the provisions of this Final Order and Judgment, including the Court's retention of jurisdiction as set forth herein, this action (including all individual and class claims presented herein) is hereby dismissed on the merits and with prejudice, and without any other past or future fees, expenses, or costs to any Party or Settlement Class Member. The Clerk of the Court is **directed** to terminate any pending motions as moot and close the file.

**SO ORDERED**, on this 29th day of January, 2019.

Marcia Morales Howard
MARCIA MORALES HOWARD
United States District Judge

Copies to:

Counsel of Record
Interested Parties

David J. Almaguer
3840 N. Pittsburgh Avenue
Chicago, IL 60634

Valen Wayne Reagan
5677 Lynndale Lane
Whitepine, TN 37890

Audrey Brown
553 Providence Church Road
Teachey, NC 28464